

Page 4

PAE AO 241
(Rev. 07/10)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Eastern District of Pennsylvania |
|---|---|
| Name (under which you were convicted): MALIK BOWERS | Docket or Case No.: **13    5550** |
| Place of Confinement: SCI Graterford | Prisoner No.: DV-7681 |

| Petitioner (Include the name under which you were convicted): MALIK BOWERS | Respondent (Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner): MICHAEL WENEROWICZ |
|---|---|
| v. | and |
| | The District Attorney of the County of: PHILADELPHIA |
| | and |
| | The Attorney General of the State of: PENNSYLVANIA |

### PETITION

1. (a)    Name and location of court that entered the judgment of conviction you are challenging:
   Court of Common Pleas of Philadelphia, Pennsylvania

   (b)    Criminal docket or case number (if you know): CP-51-CR-1103162-1996

2. (a)    Date of judgment of conviction (if you know): December 17, 1997

   (b)    Date of sentencing: December 22, 1997

3. Length of sentence: Life. (Life was imposed for murder. Sentences of 10-20 years for robbery, 5-10 years for criminal conspiracy, and 2-1/2 to 5 years for possession of an instrument of crime were also imposed, to run consecutively with each other but concurrently with the life sentence.)

4. In this case, were you convicted on more than one count or of more than one crime?  ☒Yes  ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case: murder, kidnapping, criminal conspiracy, possession of an instrument of crime

PAE AO 241
(Rev. 07/10)

_____

_____

_____

6.    (a)    What was your plea?  (Check one)

☒ (1)    Not Guilty                    ☐ (3)    Nolo contendere (no contest)

☐ (2)    Guilty                         ☐ (4)    Insanity plea

(b)    If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?   N/A

_____

_____

_____

_____

(c)    If you went to trial, what kind of trial did you have?  (Check one)

☒      Jury                          ☐      Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐      Yes                          ☒      No

8.    Did you appeal from the judgment of conviction?

☒      Yes                          ☐      No

9.    If you did appeal, answer the following:

(a)    Name of court:  Superior Court of Pennsylvania

(b)    Docket or case number (if you know):  2468 EDA 2003     (See attached page 5a for procedural

(c)    Result:   Judgment of sentence was affirmed     history leading finally to 2468 EDA

(d)    Date of result (if you know):  September 9, 2004     2003, Petitioner's direct appeal nunc

(e)    Citation to the case (if you know):  863 A.2d 1219 (table)     pro tunc.)

(f)    Grounds raised:  Please see attached page 5a .

_____

_____

_____

_____

_____

**Question 9, Page 5 – Procedural History Leading to Direct Appeal *Nunc Pro Tunc***
**Described in Answer to Question 9 (a)-(e)**

The direct appeal which was decided on September 9, 2004 was the result of an order allowing the appeal to be taken *nunc pro tunc.* The history leading up to that order was as follows:

On January 6, 1998, trial counsel, Louis T. Savino, Jr. filed a notice of appeal to the Superior Court for Petitioner, 164 PHL 1998. He then petitioned to be relieved as counsel, and Edward C. Meehan, Jr., Esquire, was appointed in his stead. Mr. Meehan, however, failed to file a brief for appellant, and the appeal was dismissed on July 27, 1999. On or about November 19, 1999, Petitioner filed a PCRA petition seeking reinstatement of his direct appeal rights, and on April 12, 2000, relief was granted. On May 11, 2000, Petitioner, still represented by Mr. Meehan, filed a timely *nunc pro tunc* appeal, Superior Court No.1467 EDA 2000. Once again, however, Mr. Meehan failed to file a brief for appellant, and the appeal was dismissed on October 16, 2000. On or about March 6, 2001, Mr. Meehan filed another PCRA petition, again requesting reinstatement of Petitioner's direct appeal rights. Relief was again granted by order dated May 30, 2001, and yet another direct appeal was timely filed, *nunc pro tunc*, on June 25, 2001, and docketed at 1747 EDA 2001. In a surreal repetition of the previous appeals, this third appeal was once again dismissed for failure to file a brief for appellant, by order dated October 15, 2001.

Undeterred, Mr. Meehan filed yet another PCRA petition on October 9, 2002, again requesting reinstatement of Petitioner's direct appeal rights. This time, Judge Savitt appointed new counsel, Barbara Ann McDermott, Esquire, who filed an amended petition on May 22, 2003. On July 9, 2003, Judge Savitt restored Petitioner's direct appeal rights for the third time. A timely *nunc pro tunc* appeal, docketed at 2468 EDA 2003, was filed by Ms. McDermott on August 5, 2003 and eventually decided on September 9, 2004.

**Question 9(f) – Grounds Raised on Direct Appeal**

Ms. McDermott raised the following questions for Petitioner on direct appeal:

1.  Whether it was reversible error for the trial court to permit evidence of Petitioner's possession and purchasing of firearms.

2.  Whether it was reversible error for the trial court to refuse a motion for a mistrial following the prosecutor's reference in closing argument to the killing being an execution.

3.  Whether it was reversible error for the trial court to refuse to instruct the jury that a person cannot be held culpable for first degree murder as an accomplice or conspirator unless that person had the specific intent to kill.

4.  Whether the evidence was sufficient to sustain the guilty verdicts.

5.  Whether the verdicts were against the weight of the evidence.

PAE AO 241
(Rev. 07/10)

(g)   Did you seek further review by a higher state court?      ☒ Yes      ☐ No

If yes, answer the following:

(1) Name of court: Supreme Court of Pennsylvania

(2) Docket or case number (if you know): 498 EAL 2004

(3) Result: Petition for allowance of appeal was denied.

(4) Date of result (if you know): June 1, 2005

(5) Citation to the case (if you know): 876 A.2d 292 (table)

(6) Grounds raised: Same grounds as in the Superior Court. Please see answer to question 9(f) on page 5a.

(h)   Did you file a petition for certiorari in the United States Supreme Court?      ☐ Yes      ☒ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: _____

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10.   Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?      ☒ Yes      ☐ No

11.   If your answer to Question 10 was "Yes," give the following information:

(a)   (1) Name of court: Court of Common Pleas of Philadelphia County

(2) Docket or case number (if you know): CP-51-CR-1103162-1996

(3) Date of filing (if you know): August 11, 2006

(4) Nature of the proceeding: Petition for Post Conviction Collateral Relief

(5) Grounds raised: Please see page 6a attached.

**Question 11(a)(5), Page 6 – Questions Raised in Petitioner's PCRA Petition**

1.  Whether the Commonwealth misrepresented and suppressed material evidence concerning the decedent Andrew Haynes and witnesses Aloysius Hall and Tracena Copper, and committed other related prosecutorial misconduct during the questioning of Tracena Copper, in violation of due process under Fourteenth Amendment to the Constitution of the United States and under Article I, Section 9 of the Pennsylvania Constitution.

2.  Whether trial and direct appeal counsel rendered ineffective assistance by failing to investigate, discover and use any available facts concerning Andrew Haynes' criminal history, Aloysius Hall's criminal history, and Tracena Copper's cooperation with governmental authorities prosecuting Petitioner, by failing to request a continuance after learning of Copper's involvement in the federal proceeding, and by failing to raise where appropriate at trial, post-trial, or on appeal the prosecutorial misconduct claims asserted in the previous issue.

3.  Whether trial counsel rendered ineffective assistance by failing to have former testimony of unavailable witness Felicia Brokenbrough read to the jury as important impeachment of the Commonwealth's time-line and Rasheema Washington's story, and by failing to impeach witnesses Hall, Duncan, Washington and Selvan Haynes, by reference to their former testimony and statements.

4.  Whether trial and direct appeal counsel rendered ineffective assistance by failing to object to the prosecution's use of its peremptory strikes, make a full record in support of that objection, and otherwise pursue Petitioner's claim of racially motivated jury selection under Batson v. Kentucky, and the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and under Article I, Sections 1, 6, 9, and 26 of the Pennsylvania Constitution.

5.  Whether trial and direct appeal counsel were ineffective for failing to (a) correctly and adequately raise and argue Petitioner's claim that the court's jury charge effectively relieved the prosecution of its burden of proving specific intent in the case of accomplice and co-conspirator liability for first degree murder, and (b) object to the prosecutor's arguments which were based upon the same fundamental constitutional error.

6.  Whether trial and direct appeal counsel were ineffective for failing to make and/or properly support arguments against admission of testimony connecting Petitioner to a certain nine millimeter weapon.

7.  Whether there was insufficient evidence to support a finding of guilt of first degree murder beyond a reasonable doubt, and whether direct appeal counsel was ineffective for inadequately arguing the issue, for failing to preserve the issue as a matter of federal due process, and for failing to properly seek review of the Superior Court's failure to decide the matter as to *petitioner*, as opposed to his co-defendant Rasheed Simpson.

8.  Whether the cumulative prejudice from the foregoing constitutional violations was sufficient to require that Petitioner be granted a new trial.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐   Yes            ☒   No

(7) Result: ___Petition was denied._____

(8) Date of result (if you know): ___August 20, 2008_____

*(9)  Please see page 7a (attached) for explanation of why this PCRA is deemed Petitioner's first.

(b)        If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐   Yes            ☐   No

(7) Result: _____

(8) Date of result (if you know): _____


(c)        If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

_____

_____

_____

_____

**Question 11(a)\*(9), Page 7 – Explanation of Why Petitioner's PCRA Petition
Filed August 20, 2008 is Deemed His First**

As set forth more particularly in answer to Question 9 on page 5a <u>supra</u>, the PCRA petition filed on August 20, 2008 was technically Petitioner's fourth. The first three, however, were solely for the purpose of restoring his direct appeal rights after appeals were dismissed for successive failures by appointed counsel to file briefs. Accordingly, it was not until the Superior Court's decision on September 9, 2004, the Pennsylvania Supreme Court's subsequent denial of *allocatur* on June 1, 2005, and the subsequent expiration of the 90 day period for filing a petition for *certiorari* to the United States Supreme Court, that Petitioner's judgment of sentence became final.

Accordingly, under Pennsylvania law, the PCRA petition filed August 20, 2008 – the first after Petitioner's judgment of sentence became final – is considered Petitioner's first petition for all relevant purposes, including timeliness and burden of proof. <u>See</u> <u>Commonwealth v. Lewis</u>, 718 A.2d 1262, 1263-1264 (Pa.Super. 1998) – cited with approval in <u>Commonwealth v. Priovolos</u>, 746 A.2d 621, 624 (Pa.Super. 2000) and <u>Commonwealth v. Vega</u>, 754 A.2d 714, 716, n.3 (Pa.Super. 2000).

_____
_____
_____
_____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐  Yes                    ☐  No

(7) Result: _____

(8) Date of result (if you know): _____

(d)     Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion:

(1)     First petition:        ☒  Yes        ☐  No
(2)     Second petition:       ☐  Yes        ☐  No
(3)     Third petition:        ☐  Yes        ☐  No

(e)     If you did not appeal to the highest state court having jurisdiction, explain why you did not:
        N/A _____
        _____

12.     For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

**CAUTION:** To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court.  Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:**  Deprivation of due process as result of defective jury charge.
Please see pages 8a-8b for detailed statement of claim and supporting facts.

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

_____
_____
_____
_____
_____
_____

**Question 12, Ground One:**

> **Petitioner was deprived of due process of law under the Fifth and Fourteenth Amendments  by the trial court's charge (and similar statements by the prosecution), pursuant to which it was reasonably likely that the jury believed that proof of a specific intent to kill on Petitioner's part was not necessary to convict Petitioner of first degree murder as accomplice or co-conspirator.**

To achieve a first degree murder conviction under Pennsylvania law, the Commonwealth must prove beyond a reasonable doubt that *the specific defendant who is convicted must have himself had the specific intent to kill the victim;* it is *not* sufficient that one of the defendant's accomplices or co-conspirators had that specific intent. Although the court did inform the jury several times that the Commonwealth had the burden of proving a particular defendant individually guilty of specific intent, those instructions were vitiated by a number of confusing uses of the plural,[1] as well as serious ambiguity in the definitions of accomplice and co-conspirator liability. For example, the jurors were instructed generally that they could find defendants guilty "of certain crimes without finding that they personally engaged in the conduct required for the commission of those crimes," and then instructed further using the plural construction "these crimes" See N.T. 12/16/97, pp. 33-36. Without further elucidation, this instruction was likely interpreted to create an exception to the usual requirement of a personal "specific intent" to kill. The confusion was magnified by the fact that in the separate instruction on the crime of criminal conspiracy, the court indicated *two interchangeable possible predicate acts,* that is, *robbing and/or shooting* the decedent. Id., pp. 28-29.

Thus, the trial court's instructions relied on the jurors to take the separate first-degree murder instructions, with the admonition that the guilt of each of the defendants must be considered separately – and use them to *amend* the conspiracy instruction and co-conspirator liability instructions given, *which permitted as a general rule the transfer of intention from one defendant to the other so long as the defendants were found to have conspired to commit **either** murder or robbery.* There is no reason in logic or in law to conclude that the jurors were capable of making that amendment, felt free to make that amendment, or did in fact make that amendment. Accordingly, the instructions as given were constitutionally infirm.

Nor was the error harmless.  A number of witnesses testified to the involvement of Petitioner's co-defendant Rasheed Simpson in making ransom demands, and to Allister Durrante's appearance on the decedent's doorstep as a precipitating event to the eventual abduction. However, *only Rasheema Washington* directly connected *Petitioner* to the kidnapping. Furthermore, unlike the testimony of Stanley Hall and Clayton Duncan regarding Simpson's personally delivered threat to kill Haynes if money was not forthcoming, not one word of similar import was attributed to Petitioner, *even by Washington.* Indeed, Washington's account, even if believed, would be equally consistent with an intent to participate in kidnapping and robbery short of murder. See generally, N.T. 12/12/97, pp. 10-18, 41-50, 69-71, 97-101. Given this paucity of evidence, therefore, the inaccuracy of the Court's instructions on co-conspirator liability was of critical importance.

---

[1]  See generally, N.T. 12/16/97, pp. 6-7, 14-15, 22, 32,  55, 79-81, 87, 89.

The prejudicial effect was augmented, moreover, by the arguments made by the prosecutor during his closing speech which, like the charge of the Court, confused and mixed together the evidence concerning Rasheed Simpson's specific intent to kill, with principles of accomplice and co-conspirator liability, using catch phrases such as "in for a penny, in for a pound" and otherwise indicating that it was irrelevant whether Petitioner agreed to commit a robbery or agreed to commit a murder, and inviting the jury to impute Simpson's intentions to petitioner.  See, e.g., N.T. 12/15/97, pp. 123-125, 137-138, 164-165.

(b) If you did not exhaust your state remedies on Ground One, explain why: _N/A_____

_____

_____

_____

**(c) Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        ☒  Yes        ☐  No

    (2) If you did not raise this issue in your direct appeal, explain why? _____

NOTE:  This issue was raised on direct appeal and also in the PCRA proceeding as a constituent part of the ineffectiveness claim set forth as Ground Two.

**(d) Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

        ☒  Yes        ☒  No    See NOTE above

    (2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

    (3) Did you receive a hearing on your motion or petition?    ☐  Yes    ☐  No

    (4) Did you appeal from the denial of your motion or petition?    ☐  Yes    ☐  No

    (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

        ☐  Yes        ☐  No

    (6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

PAE AO 241
(Rev. 07/10)

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

_____

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: _____

_____

_____

**GROUND TWO:**   Ineffective assistance of counsel for failure to correctly litigate the previous issue regarding the Court's charge, and for failure to object to portions of the Commonwealth's

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
closing similarly misstating the law.  Please see pages 10a-10b (attached) for a detailed statement of this claim and supporting facts.

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why:  N/A

_____

_____

_____

(c) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes          ☒ No

**Question 12, Ground Two:**

> **Trial and direct appeal counsel rendered ineffective assistance under the Fifth, Sixth and Fourteenth Amendments by failing to (a) correctly and adequately raise and argue Petitioner's claim that the court's jury charge effectively relieved the prosecution of its burden of proving specific intent in the case of accomplice and co-conspirator liability for first degree murder, and (b) object to the prosecutor's arguments which were based upon the same fundamental constitutional error.**

Both defense counsel unequivocally objected to the trial court's failure to specifically tell the jury that a defendant may not be convicted of first degree murder on an accomplice liability theory unless he personally shares the specific intent to kill. It is not clear from the colloquy, however, whether an objection to the co-conspirator part of the charge was also understood. See N.T. 12/15/97, pp. 58-62. To the extent that counsel's objection may have been insufficient under Pa.R.A.P. 302(b), counsel was clearly ineffective, since the Pennsylvania Supreme Court's opinion in Commonwealth v. Huffman, 536 Pa. 196, 199, 638 A.2d 961, 962 (1994) had by the time of Petitioner's trial very clearly cautioned charging courts to add additional explanations to the general co-conspirator liability instruction in cases involving first degree murder. Similarly ineffective was the failure to object to the portions of the prosecutor's closing argument described above, inviting decision on the same improper basis. Nor was there any possible strategic reason for the omission, which, as has been argued in Part (A) above, was highly prejudicial.

Direct appeal counsel, similarly, argued Petitioner's jury charge issue in a neglectful and cursory manner. The relevant instructions were never so much as quoted, for example, and the offending, misleading portions were never specifically identified. Furthermore, in a truly stunning display of inattention and one-size-fits-all form-briefing, direct appeal counsel string-cited to the Pennsylvania Supreme Court's decision in co-defendant Simpson's appeal – which dealt with portions of the very same jury instructions at issue here – without any acknowledgment of the connection to Petitioner's case at all. See Brief for Appellant, 3/15/04 (PCRA Petition Exhibit A), p. 16. Even after the Superior Court rejected Petitioner's appeal based solely on the Simpson decision (Superior Court Memorandum, 9/9/04 (PCRA Petition, Exhibit B, pp. 5-6), counsel *still* made no effort to distinguish that decision. See Petition for Allowance of Appeal, 10/8/04 (Exhibit C to the PCRA petition), pp. 12-16. Since the arguments this Petitioner was attempting on appeal went *beyond* the argument addressed in Simpson, competent counsel would have pointed out that while the Supreme Court in Simpson examined the first degree murder charge and the accomplice/co-conspirator charges, it does not appear that the Court's attention was drawn to the fact that when charging the jury concerning the *crime* of criminal conspiracy, the trial court's instructions were couched in terms allowing conviction for *either* a conspiracy to rob *or* a conspiracy to murder. See Commonwealth v. Simpson, 562 Pa.255, 273-279, 754 A.2d 1264, 1273-1276 (2000). The Supreme Court, therefore, had no occasion to consider the effects of this confusing definition upon the instructions given for co-conspirator liability generally, and how the combination would be viewed by a jury considering a first degree murder charge on a co-conspirator theory. Nor did it, obviously, consider the potential effects of the instruction upon Petitioner specifically, who was not

directly implicated in any death threats towards the decedent.  Therefore, had the <u>Simpson</u> decision been faced directly, and had Petitioner's argument been made correctly, there would have been a very real chance of meriting separate consideration by both the Superior and Supreme Courts.

Direct appeal counsel also, ineffectively, failed to include any citation to federal precedent on the issue at all, including but not limited to the decision of the Third Circuit Court of Appeals in <u>Smith v. Horn</u>, 120 F.3d 400, 415 (3d Cir. 1997), in which jury instructions strikingly similar to those in Petitioner's case were held to violate due process, in a reasoned opinion squarely based upon United States Supreme Court cases.

For all these reasons, therefore, direct appeal counsel, like trial counsel,  rendered seriously ineffective service.

(2) If you did not raise this issue in your direct appeal, explain why? Under Pennsylvania law, claims relating to ineffective assistance of counsel must be deferred to the PCRA stage.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes          ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Petition for Post Conviction Collateral Relief

Name and location of the court where the motion or petition was filed: Court of Common Pleas of Philadelphia County

Docket or case number (if you know): CP-51-CR-1103162-1996

Date of the court's decision: August 20, 2008

Result (attach a copy of the court's opinion or order, if available): Petition was denied. Opinion dated March 20, 2009 is attached.

(3) Did you receive a hearing on your motion or petition?          ☐ Yes     ☒ No

(4) Did you appeal from the denial of your motion or petition?          ☒ Yes     ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☒ Yes          ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Superior Court of Pennsylvania

Docket or case number (if you know): 2703 EDA 2008

Date of the court's decision: December 31, 2009

Result (attach a copy of the court's opinion or order, if available): Order of the Court of Common Pleas was affirmed. Opinion is attached.

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Two: Petition for allowance of appeal to the Pennsylvania Supreme Court was filed on January 22, 2010 and denied on September 12, 2013, Docket No. 37 EAL 2010

**GROUND THREE:** Ineffective assistance -- failure to use former testimony and statements of Brokenbrough, Hall, Duncan, Washington and Selvan Haynes. Please see pages 12a-12b for detailed statement of claim and supporting facts.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Three, explain why: N/A

(c) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

☐ Yes        ☒ No

(2) If you did not raise this issue in your direct appeal, explain why? Under Pennsylvania law, claims relating to ineffective assistance of counsel must be deferred to the PCRA stage.

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes        ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Petition for Post Conviction Collateral Relief

**Question 12, Ground Three:**

> **Trial counsel rendered ineffective assistance by failing to have the former testimony of unavailable witness Felicia Brokenbrough read to the jury to impeach the Commonwealth's time-line and Rasheema Washington's story, and by failing to impeach witnesses Hall, Duncan, Washington and Selvan Haynes by reference to their former testimony and statements.**

In Petitioner's case, trial counsel failed to utilize important impeachment material which would have demonstrated the damaging fact that that all the Commonwealth's witnesses from the earlier trial of Petitioner's alleged co-conspirator Allister Durante had made a coordinated and mutually consistent alteration in their testimonies for Petitioner's trial – dramatically changing the alleged time of the events so as to accommodate the tale told by a new witness, Rasheema Washington, *who was the only witness to implicate Petitioner in the kidnapping.* Had counsel demonstrated this suspiciously coordinated shift in testimony to the jury, it is extremely likely that the credibility of the entire prosecution would have been destroyed – and particularly as to Petitioner, against whom Rasheema Washington was the only direct witness.

This could have been done, first of all, by having the former testimony of witness Felicia Brokenbrough read to the jury, in light of her subsequent unavailability for Petitioner's trial. Contrast, e.g., Brokenbrough's testimony at the Durrante trial – N.T. 10/5/95 (PCRA Petition Exhibit U), p. 17 (abduction took place well after 10:00 or 10:30 pm) – with Clayton Duncan's hearsay testimony as to Brokenbrough's excited utterances immediately after the abduction, considerably earlier in the evening – N.T. 12/10/97, pp. 46-53– with Washington's story which would have required about an hour and a half between the initial abduction and the actual killing – N.T. 12/12/97, pp. 43-45, 97 – which killing undeniably took place before the 11:10 pm according to 911 records – Telephone and Radio Transmittal Log, 12/8/93 (PCRA Petition Exhibit N). Compare also N.T. 12/10/97, pp. 46-52 (Duncan's time-line at Petitioner's trial, involving an initial contact by Durrante at 9:00 p.m., followed by brief conversation, shower, 5 minutes listening to music and 15 minutes of television before Brokenbrough rang the doorbell to report the abduction) and N.T. 12/11/97, pp. 16-18, 40, 44 (Hall's testimony at Petitioner's trial placing Durrante's first knock at 8:45 p.m. and the first ransom call after the abduction at 9:45 p.m.) with N.T. 10/3/95 (PCRA Exhibit O), pp. 6-10, 26-28 (Duncan's testimony at Durrante's trial that it was already 10:00 pm before Durrante first came to the apartment door) and N.T. 10/3/95 (PCRA Exhibit T), p. 92 (Selvan Haynes' testimony at Durrante's trial placing the call from Hall about his brother's abduction sometime *after 10:00 p.m.).*

Given all the above, counsel was clearly ineffective in failing to apprise the jury of the former testimony of these witnesses – all consistently placing the abduction well after 10:00 or 10:30 p.m., which would not have left time for the occurrence of any of the events implicating Petitioner which were supposedly witnessed by Washington.

Each of these witnesses was, moreover, subject to impeachment related to other details of their stories. For example, Washington's description of a full half hour of vicious beating and

kicking was belied by the actual condition of the victim's body, which revealed nothing more than a scrape on the leg. See N.T. 12/11/97, pp. 159, 162, 166. Her preliminary hearing testimony and statements to police were at odds with her trial testimony over such matters as timing, whether weapons were in evidence, what she was actually in a position to see, and how Petitioner was able to gain access to her apartment. Compare Statement of Rasheema Washington, 6/17/96 (PCRA Exhibit W) and N.T. 11/7/96 (Preliminary Hearing, PCRA Exhibit X), pp. 5-6, 8, 16, 19 with N.T. 12/12/97, pp. 10-16, 27, 41-45, 49-50, 70-71.

Duncan's testimony was similarly variable from direct examination to cross examination and from trial to trial, resulting in four different stories about the timing and order of events, and where he was at different times during the evening. Compare N.T. 12/10/97, pp. 44-60, 72-73 with id., pp. 57-59, 69, with N.T. 10/3/95 (PCRA Exhibit O), pp. 6-10, 26-28, 31-32, with id., pp. 30-33, 40-42. Aloysius ("Stanley") Hall was also the author of a series of different stories about where he and Duncan were at the time of Durrante's visit, what he did and did not see, what Brokenbrough allegedly told him and the number of ransom calls that were received. See N.T. 12/11/97, pp. 15-23, 33-36, 40-58, 62-66, 80, 84-87; Statement of Aloysius Hall (PCRA Exhibit P), N.T. 11/7/96 (Preliminary Hearing, PCRA Exhibit Q, pp. 41-46; N.T. 10/3/95 (PCRA Exhibit R), pp. 58-61, 74-76. Even the decedent's brother, Selvan Haynes, made markedly divergent statements about the timing of events and the number, location and content of the alleged ransom calls. See N.T. 12/11/97, pp. 70-89; Statement of Selvan Haynes (PCRA Exhibit S), pp. 1-3; N.T. 10/3/95 (PCRA Exhibit T), pp. 92-106.

None of these opportunities for effective cross examination of these important prosecution witnesses were used. The mere recitation of their pervasive inconsistencies – from day to day as well as from witness to witness – would clearly have had significant potential for convincing the jury that the Commonwealth's case was a made-up patchwork of opportunistic lies – and, therefore, for a judgment of acquittal. The failure to pursue this potential, and in particular the potential for discrediting Rasheema Washington's story, was neglectful, ineffective, devoid of any strategic purpose and highly prejudicial.

Name and location of the court where the motion or petition was filed:   Court of Common Pleas of Philadelphia County

Docket or case number (if you know):   CP-51-CR-1103162-1996

Date of the court's decision:   August 20, 2008

Result (attach a copy of the court's opinion or order, if available):   Petition was denied.  Opinion dated March 20, 2009 is attached.

(3) Did you receive a hearing on your motion or petition?   ☐ Yes   ☒ No

(4) Did you appeal from the denial of your motion or petition?   ☒ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☒ Yes          ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:   Superior Court of Pennsylvania

Docket or case number (if you know):   2703 EDA 2008

Date of the court's decision:   December 31, 2009

Result (attach a copy of the court's opinion or order, if available):   Order of the Court of Common Pleas was affirmed.  Opinion is attached.

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:   N/A

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:   Petition for allowance of appeal to the Pennsylvania Supreme Court was filed on January 22, 2010 and denied on September 12, 2013, Docket No. 37 EAL 2010

**GROUND FOUR:** through NINE:   Please see pp. 13a-13e  for a detailed statement of Petitioner's grounds and the factual bases therefore.

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

**Question 12, Ground Four:**

**Petitioner was deprived of due process of law by virtue of his conviction of first degree murder upon evidence which was legally insufficient to provide proof beyond a reasonable doubt that he specifically intended to kill the decedent.**

As previously stated, it is necessary for a first degree murder conviction, to establish that the defendant *specifically* intended to kill.

The evidence against Petitioner fell into two categories. First of all, there was some evidence suggesting that he possessed a certain 9 millimeter gun weeks prior to Haynes killing, and possibly again eight days after the killing. See ## 7-8 below. Secondly, Rasheema Washington testified that Petitioner and four others including Rasheed Simpson, and Allister Durrante, brought Haynes to her apartment, bound hand and foot, where he was kicked and beaten and subjected to repeated demands for money, until finally, a half hour later, at her request, they all left again. N.T. 12/12/97, pp. 9-10, 13-17, 38-39, 42-46, 49-50, 69, 97-101. Notably, Washington did *not* implicate Petitioner in any of the ransom calls or threats to kill Haynes. N.T. 12/12/97, pp. 17, 69, 99-101. According to Hall, moreover, the caller was always Simpson. N.T. 12/11/97, p. 33. Accordingly, every act attributable to Petitioner from any of the testimony anywhere in the trial is just as consistent with a limited intent to perpetrate a kidnapping, as with the claimed conspiracy to murder. The unavoidable conclusion, therefore, is that the Commonwealth failed to establish beyond a reasonable that Petitioner was an accomplice or co-conspirator to murder in the first degree, and the conviction is deficient as a matter of due process.

**Question 12, Ground Five:**

**Direct appeal counsel was ineffective for inadequately arguing the due process/insufficiency issue as a matter of Pennsylvania law and constitutional due process, and for failing to properly seek review of the Superior Court's failure to decide the matter as to *Petitioner*, as opposed to his co-defendant Rasheed Simpson.**

Although direct appeal counsel did raise the issue of the sufficiency of the evidence, she failed to directly cite any federal constitutional precedents, such as Jackson v. Virginia, 443 U.S. 307, 324 (1979), for example. See Brief for Appellant (PCRA Exhibit A), pp. 20-22; Petition for Allowance of Appeal (PCRA Exhibit C), pp. 16-18. Indeed, counsel's argument was insufficient even as a matter of state law, containing not a single citation to the actual record, and without any close analysis of the evidence, or lack of evidence, relating to Petitioner in particular. Id. Quite possibly as a result of this, a panel of the Superior Court decided Petitioner's sufficiency of the evidence issue *based on what the Supreme Court had held about the sufficiency of the evidence as to Petitioner's co-defendant Rasheed Simpson.* See Appendix A hereto, p. 6.

This exclusive reliance upon the sufficiency determination undertaken in the Simpson case was, unfortunately, itself a violation of the principles analyzed in #1 above, which require that each

defendant's guilt or innocence of first degree murder be considered *independently* of the guilt or innocence of the co-defendant. Furthermore, this violation was *especially* wrong and prejudicial in this case, because there *was* evidence from more than one witness that Rasheed Simpson – unlike Malik Bowers – specifically threatened to kill Mr. Haynes. Accordingly, the Supreme Court's determination that there was sufficient evidence to convict *Simpson* of "willingly and consciously participating in the killing of the victim" had absolutely *no* relevance to the question presented in *this* Petitioner's appeal, which is whether or not there was sufficient evidence of intent to kill on the part of *this* Petitioner, Malik Bowers.

Nevertheless, direct appeal counsel failed to point out the error in the Superior Court's analysis in her subsequently filed petition for allowance of appeal to the Pennsylvania Supreme Court – in which she merely cut-and-pasted her original, inadequate argument. Once having chosen to argue a valid and meritorious due process claim, stemming from the lack of sufficient evidence, there could have been no strategic purpose to arguing it in an ineffective manner. The prejudice, moreover, is clear, going to the very heart of the conviction.

**Question 12, Ground Six:**

**Trial and direct appeal counsel rendered ineffective assistance by failing to object to the prosecution's use of its peremptory strikes, make a full record in support of that objection, or otherwise pursue Petitioner's claim of racially motivated jury selection under <u>Batson v. Kentucky</u>, and the Fifth, Sixth and Fourteenth Amendments.**

Analysis of the notes of voir dire reveal that Petitioner had a valid and meritorious underlying claim of discrimination by the prosecution in the exercise of its peremptory strikes under <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). First of all, there was a disproportionate removal of black venire members by the prosecution's peremptory strikes, the Commonwealth exercising 13 of its 18 peremptory challenges (72%) against people of color, and only 5 (28%) against whites, despite the fact that people of color comprised only 48% of the venire, and whites, 52%. Whereas the original venire was 59% black, that percentage dropped to 43% in the eventual petit jury (including alternates). <u>See</u> state PCRA Petition, PCRA Exhibits D-H, and supporting memorandum pp. 103-104. Racial discrimination is also indicated from the disparate treatment of similarly situated, particular black and white venire members, including (a) the acceptance of Bruce Jamanow, Danny Farrel and Tina Mason while striking Jimmy Haynes, Paul Melchor and Mabel Harris; (b) the acceptance of Patricia Anick while striking Juanita Martin, (c) the acceptance of Michele Papa while striking Janice Jones, and (d) the acceptance of Joanne Hehn, Michele Papa and Edwin Robinson, while striking Paula Smith, Valerie Lipford, and Magnolia Hicks. <u>Id.</u>, pp. 105-111. This is in addition to the other well known indications of possibly systemic racial discrimination in the Philadelphia District Attorney's office, including the 1986 training tape by Jack McMahon, Esquire,[2]

---

[2]     An August, 1990 lecture given by Assistant District Attorney Bruce Sagel has been suggested as further evidence of continuing racially discriminatory jury selection practices. <u>See</u>

the study by David Baldus and George Woodworth analyzing capital jury selection during the years 1981-1999[3] (thus including the year of Petitioner's trial, during which codefendant Simpson was facing the death penalty), and the circumstances documented in previously decided federal cases, including Diggs v. Vaughn, 1991 WL 46319, *1 (E.D.Pa. Mar. 27, 1991) (3 different trials ending 1977); Sistrunk v. Vaughn, 90-CV-1415, Magistrate's Report & Recommendation (E.D.Pa. August 10, 1995 ), p. 6 (Powers, Chief Magistrate Judge)(1981 trial), rev'd 96 F.3d 666 (3d Cir. 1996) (grounds not relevant to the finding of discrimination); Harrison v. Ryan, 909 F.2d 84 (3d Cir. 1990)(1982 trial); Holloway v. Horn, 355 F.3d 707 (3d Cir. 2004) (1986 trial). See PCRA Exhibits I-J. M.

Accordingly, there existed strong evidence on which trial and direct appeal counsel could and should have raised an issue under Batson and violation of due process and equal protection and the impartial jury guarantees of the Fifth, Sixth, and Fourteenth Amendments. Defense counsel's failure to object to the prosecution's use of its peremptory strikes to achieve racial discrimination and to undermine the impartiality of the jury, had no possible strategic purpose and gravely prejudiced Petitioner, Accordingly, counsel rendered ineffective assistance and the state courts' decisions denying PCRA relief were based on objectively unreasonable findings of fact given the record, and are contrary to, and unreasonable applications of, clearly established federal law.

**Question 12, Ground Seven:**

**Petitioner was deprived of due process of law by virtue of the admission of prejudicial and irrelevant evidence concerning his unrelated purchase and alleged later possession of a certain firearm.**

Despite the fact that nothing but unidentifiable bullet fragments were recovered, and no testimony was offered as to the type or caliber firearm which was responsible for killing Haynes (N.T. 12/5/97, p. 107), the Commonwealth was permitted to put on testimony (1) from Tracena Copper that she purchased a 9 millimeter gun for Petitioner on September 28, 1993, and (2) from Officer Slavin regarding an incident in Cheltenham Township in which this same gun was found on the driver's side floor of a car into which Petitioner had just sat down *on the passenger side*. N.T. 12/11/97, pp. 99-107, 112-113, 119-142; 12/12/97, pp. 126-132; 12/15/97, pp. 3-5. These references to a gun which was never shown to be similar to the one used to kill the decedent, and which Petitioner was never even convicted of "possessing" following the Cheltenham Township incident

---

PCRA Exhibit K. But see Bond v. Beard, 539 F.3d 256, 274 (3d Cir. 2008) and Commonwealth v. Castro, CP-51-CR-0310323-1997, April 26, 2007 Opinion of Honorable Carolyn Engel Temin (both concluding after testimony that Mr. Sagel did not suggest violating Batson).

[3] David C. Baldus & George Woodworth, *Evidence of Race Discrimination in the Commonwealth's Use of Peremptory Strikes in Capital Cases – Commonwealth v. Lee Baker (1984)*, PCRA Exhibit M.

(N.T. 12/11/97, pp. 137-138), injected highly prejudicial and irrelevant material into Petitioner's trial, in violation of fundamental due process guarantees. Additional prejudice inured to Petitioner because of the unboundaried way in which the testimony was elicited from both Ms. Copper and Officer Slavin, See, e.g., N.T. 12/12/97, pp. 127-128 (Tracena Copper's persistent, apparently calculated "blurt-outs" implying a pattern of dealing in multiple guns for Petitioner); N.T. 12/11/97, pp. 105-107, 125-127 (Officer Slavin's testimony that Petitioner was reaching under his passenger side seat "in an attempt to reach for the gun" – when the gun was in fact under the *driver's seat*); id., p. 140 (prosecutor "misspoke" by indicating, contrary to fact, that defendant had stipulated to ownership of the gun).

**Question 12, Ground Eight:**

> **Both trial and direct appeal counsel were ineffective for failing to make and/or properly support arguments against admission of testimony purporting to connect Petitioner to a certain nine millimeter weapon.**

There were wide-ranging discussions among counsel and the court, related to the admission of testimony concerning the aforementioned 9 millimeter firearm, and it was the Superior Court's judgment on direct appeal that counsel had waived and withdrawn Petitioner's objection. See Superior Court Memorandum (PCRA Exhibit B), pp. 3-4; see also N.T. 12/5/97, pp. 95-96, 107-130, 134-137; 12/9/97, pp. 5-8; 12/11/97, pp. 91-93; 12/12/97, pp. 141-166. If true, this constituted clear ineffective assistance. Counsel had a clearly meritorious argument pursuant to both Pennsylvania rules of evidence and due process considerations, for exclusion of all evidence related to this firearm. There was no strategic reason for counsel to have *ever* acquiesced in this inflammatory and largely irrelevant testimony. The prejudice was great, moreover, not only because of the "legitimate" content of the testimony proposed, but also because of the highly inflammatory and unboundaried way in which the prosecutor permitted its witnesses to testify and attempted, in fact, to testify himself. Trial counsel's performance was, accordingly, constitutionally ineffective.

The same is true of direct appeal counsel. Instead of carefully and cogently presenting the meritorious arguments outlined above on direct appeal, counsel effectively abandoned them. First of all, the Brief for Appellant unaccountably *conceded* the admissibility of Ms. Copper's testimony, which concession was accepted without further inquiry by the Superior Court in its Opinion. See Brief for Appellant (PCRA Exhibit A), p. 12; Superior Court Memorandum (PCRA Exhibit B), p.3. Secondly, counsel neglected to file a reply brief contesting the Commonwealth's assertion that trial counsel waived the entire issue of Officer Slavin's testimony's admissibility, which was arguably wrong. Clearly, this was ineffective assistance. Once having stated a particular issue on appeal, there is never a good strategic issue for briefing an issue in such a way as to virtually insure a negative outcome. Accordingly, Petitioner was clearly prejudiced.

**Question 12, Ground Nine:**

**The cumulative prejudice from the foregoing constitutional violations was sufficient to require that Petitioner be granted a new trial.**

When evaluating whether Petitioner has suffered deprivation of his constitutional right to due process, and when evaluating the prejudice to Petitioner from his various ineffectiveness claims, set forth above, it is important to consider, taken together, the effects of all founded violations on the fairness and reliability of Petitioner's trial.   See, e.g., Reid v. Vaughn, 109 Fed.Appx. 500 (3d Cir. 2004) (errors that might not amount to due process deprivation  when considered alone, may cumulatively produce a trial that is fundamentally unfair).

The state courts' determinations denying relief on all the foregoing grounds are, for the reasons set forth above, based on objectively unreasonable findings of fact and are contrary to, and  represent unreasonable applications of, clearly established federal law.

PAE AO 241
(Rev. 07/10)

_____

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why:  N/A

_____

_____

_____

_____

(c) **Direct Appeal of Ground Four:**  through Nine:

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        ☒   Yes            ☒   No

    (2) If you did not raise this issue in your direct appeal, explain why?  Grounds 4 and 7 were raised on direct appeal .  The remaining issues relate to ineffective assistance of counsel which claims must be deferred until the PCRA stage under Pennsylvania law.

(d) **Post-Conviction Proceedings:**

    (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court? Grounds 5-6, 8-9 were raised in the PCRA.  Grounds 4 and 7 were re-raised as constituent parts of Grounds 5 and 8.

        ☒   Yes            ☐   No

    (2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:  Petition for Post Conviction Collateral Relief

Name and location of the court where the motion or petition was filed:  Court of Common Pleas of Philadelphia County

Docket or case number (if you know):  CP-51-CR-1103162-1996

Date of the court's decision:  August 20, 2008

Result (attach a copy of the court's opinion or order, if available):  Petition was denied.  Opinion dated March 20, 2009 is attached.

_____

    (3) Did you receive a hearing on your motion or petition?         ☐ Yes     ☒ No

    (4) Did you appeal from the denial of your motion or petition?     ☒ Yes     ☐ No

PAE AO 241
(Rev. 07/10)

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?

☒ Yes          ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: Superior Court of Pennsylvania

Docket or case number (if you know): 2703 EDA 2008

Date of the court's decision: December 31, 2009

Result (attach a copy of the court's opinion or order, if available): Order of the Court of Common Pleas was affirmed.  Opinion is attached.

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: N/A

(e)      **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four: Petition for allowance of appeal to the Pennsylvania Supreme Court was filed on January 22, 2010 and denied on September 12, 2013, Docket No. 37 EAL 2010

13.   Please answer these additional questions about the petition you are filing:

(a)      Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?          ☒ Yes          ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

PAE AO 241
(Rev. 07/10)

(b)     Is there any ground in this petition that has not been presented in some state or federal court?  If so, which ground or grounds have not been presented, and state your reasons for not presenting them:  No.

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?     ☒   Yes       ☐   No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.  Petitioner filed a protective habeas on January 29, 2010, which was docketed at 2:10-cv-432 in this Court.  Petitioner's motion for a stay pending exhaustion of state remedies was denied and the case was dismissed without prejudice for failure to exhaust state remedies.  The May 19, 2010 Report and Recommendation by United States Magistrate Judge L. Felipe Restrepo and the July 1, 2010 Order by the Honorable Thomas M. Golden are attached.

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?     ☐   Yes       ☒   No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised:

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a)     At preliminary hearing:     Louis T. Savino, Jr., Esquire, Two Penn Center Plaza, 15th Street and John F. Kennedy Blvd, Suite 1516, Philadelphia, PA 19102

(b)     At arraignment and plea:  Louis T. Savino, Jr., Esquire, as above

(c)   At trial:   Louis T. Savino, Jr., Esquire, as above

(d)   At sentencing:   Louis T. Savino, Jr., Esquire, as above

(e)   On appeal:   Please see page 17a, attached

(f)   In any post-conviction proceeding:   Undersigned counsel Carole L. McHugh and Barnaby C. Wittels, Esquire

(g)   On appeal from any ruling against you in a post-conviction proceeding:   Undersigned counsel Carole L. McHugh and Barnaby C. Wittels, Esquire

17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?                    ☐   Yes         ☒   No

(a)   If so, give the name and location of the court that imposed the other sentence you will serve in the future: _____

(b)   Give the date the other sentence was imposed: _____

(c)   Give the length of the other sentence: _____

(d)   Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?               ☐   Yes         ☐   No

18.   **TIMELINESS OF PETITION:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition*

Petitioner's judgment of sentence became final on August 30, 2005. Petitioner filed a timely PCRA on August 11, 2006. After the PCRA petition was denied on August 20, 2008, Petitioner filed a timely appeal to the Pennsylvania Superior Court on September 17, 2008. After the Superior Court affirmed on December 31, 2009, Petitioner filed a timely petition for allowance of appeal to the Pennsylvania Supreme Court on January 22, 2010, which was denied on September 12, 2013. At the time the PCRA was filed, there were 19 days remaining on the

**Question 16(e) – Counsel on Direct Appeal**

Barbara Ann McDermot, Esquire –
Currently the Honorable Barbara Ann McDermott
Court of Common Pleas of Philadelphia County
1403 Criminal Justice Center
1301 Filbert Street
Philadelphia, PA 19107

And before Judge McDermott –

Edward C. Meehan, Jr., Esquire
211 N. 13th Street, Suite 701
Philadelphia, PA 19107

PAE AO 241
(Rev. 07/10)

AEDPA statute of limitations, which was tolled by that filing.  The statute began to run again on September 12, 2013 and the within petition is being filed within 19 days of that date.

_____

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)     A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court.  The limitation period shall run from the latest of -

     (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

     (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

     (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

     (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:      issue the writ of habeas corpus directing Petitioner's release or a new trial,

or any other relief to which petitioner may be entitled.



Signature of Attorney (if any)

BARNABY C. WITTELS, ESQUIRE

PAE AO 241
(Rev. 07/10)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct ~~and that this~~
~~Petition for Writ of Habeas Corpus was placed in the prison mailing system on~~ _____ .

(month, date, year)

Executed (signed) on ___ 9 - 2 0 - 1 3 _____ (date).

_____
Signature of Petitioner

**MALIK BOWERS**

If the person signing is not the petitioner, state the relationship to petitioner and explain why petitioner is not signing
this petition. _____

_____

_____

_____

_____

# ATTACHMENTS TO PETITION
## UNDER 28 U.S.C. § 2254

A.  <u>Commonwealth v. Malik Bowers</u>, Superior Court Memorandum Opinion, No. 2468 EDA 2003, filed September 9, 2004

B.  <u>Commonwealth v. Malik Bowers</u>, Court of Common Pleas of Philadelphia County, No. CP-51-CR-1103162-1996, Opinion of the Honorable William J. Mazzola, filed March 20, 2009

C.  <u>Commonwealth v. Malik Bowers</u>, Superior Court Memorandum Opinion, No. 2703 EDA 2008, filed December 31, 2009

D.  <u>Malik Bowers v. David D. DiGuglielmo</u>, United States District Court for the Eastern District of Pennsylvania, No. 2:10-cv-00432-TMG, Report and Recommendation by United States Magistrate Judge L. Felipe Restrepo, filed May 19, 2010

E.  <u>Malik Bowers v. David D. DiGuglielmo</u>, United States District Court for the Eastern District of Pennsylvania, No. 2:10-cv-00432-TMG, Order by the Honorable Thomas M. Golden, dated July 1, 2010 and filed July 6, 2010

**Attachment A**

Commonwealth v. Malik Bowers
Superior Court Memorandum Opinion
No. 2468 EDA 2003
Filed September 9, 2004

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| Appellee | : | PENNSYLVANIA |
| v. | : | |
| MALIK BOWERS | : | |
| Appellant | : | No. 2468 EDA 2003 |

Appeal from the Judgment of Sentence December 22, 1997
In the Court of Common Pleas of Philadelphia County
Criminal No. 0316 November Term 1996

BEFORE:    HUDOCK, MONTEMURO* and KELLY, JJ.

MEMORANDUM:

**FILED SEPTEMBER 9, 2004**

This is a *nunc pro tunc* appeal from the judgment of sentence of life imprisonment plus a consecutive 27½ to 55 year term entered following Appellant's jury conviction of first degree murder, robbery, kidnapping, conspiracy and possessing instruments of crime. The charges stem from Appellant's participation in the December 1993 kidnapping for ransom of one Andrew Haynes. The victim was abducted from in front of his apartment building, and brought, bound and with a hat over his face, to the residence of Raheema Washington from where the kidnappers telephoned the victim's family demanding that $20,000 be paid them within 15 minutes. When the family was unable to comply, the victim was shot four times in the back of the head and his body dumped in a vacant lot.

*Retired Justice assigned to Superior Court.

J. S47017/04

A week after the murder, while the co-conspirators and others attended a movie, police officers patrolling the theatre parking lot noticed that their vehicle lacked a license plate, and upon looking inside saw a gun protruding from under the front seat of the car.  When the group returned to the vehicle, Appellant was arrested and the gun seized.   Appellant was not arrested for the killing until July of 1996, when Ms. Washington came forward with information about the crime.  He was then tried jointly with co-conspirator Rasheed Simpson, who received the death sentence.[1]

A notice of appeal was filed first by trial counsel, who failed to file a brief resulting in dismissal of the appeal.  Appointed counsel filed notices of appeal after Appellant's right to appeal was twice reinstated *via* two petitions under the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541 *et seq.*  However, no brief was filed in either instance.  This counsel filed a third PCRA petition, Appellant's rights were again reinstated, and the appeal finally perfected by yet a different appointed counsel.

Appellant presents us with five issues, the first of which challenges the trial court's admission, through three witnesses, of evidence concerning his purchase and possession of firearms, specifically a 9mm handgun.  The witnesses were the person who actually purchased the gun at Appellant's behest, Tracena Copper; another, Ms. Washington, who testified that it

---

[1] A third conspirator was tried separately and convicted of second degree murder and related offenses, while a fourth has never been identified.

belonged to co-conspirator Simpson; and the police officer, James Slavin, who recovered it. All of this testimony, he claims, constitutes other crimes evidence, and as such, is inadmissible.

However, even though the bullets recovered from the victim's body were too badly damaged to be connected with any particular gun, evidence of an accused's access to firearms is admissible where "the Commonwealth show[s] sufficient circumstances to justify an inference by the finder of fact that the particular weapon was likely to have been used in the commission of the crime charged." *Commonwealth v. Spotz*, 716 A.2d 580, 590 (Pa. 1998) (citation omitted).

Of the three witnesses named, none provides grounds for relief: the evidence from Ms. Copper confirmed that Appellant possessed the gun before the murder and that it remained in his possession thereafter. It was thus admissible, as even Appellant grudgingly concedes. Ms. Washington's testimony is not, indeed cannot be, advanced as prejudicial, since it constituted an attempt to erase any connection between Appellant and the weapon. As to the testimony of the third witness, Officer Slavin, Appellant's objection is waived. As the Commonwealth points out, trial counsel withdrew his objection to the evidence so that the circumstances surrounding police acquisition of the gun could be explored, and a limiting

J. S47017/04

instruction given to the jury.[2]  Thus, Appellant's claim as to this witness is not before us, Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"), and the matter of trial court error in this regard is without merit.

Appellant's remaining claims challenge the trial court's refusal to grant his motion for a mistrial; its refusal to give a requested jury instruction concerning accomplice liability; and the sufficiency and the weight of the evidence.  All of these issues have been examined by our Supreme Court on the basis of the same record in the case of Appellant's co-defendant, who was convicted of exactly the same offenses for the same conduct as Appellant. *See Commonwealth v. Simpson*, 754 A.2d 1264 (Pa. 2000).[3] We will therefore briefly address Appellant's issues, except the weight of evidence claim, by reference to the Court's holdings on each.

Appellant argues that the prosecutor's remark during closing argument that the killing was an execution was so prejudicial as to warrant a mistrial. Our Supreme Court noted that "[a] prosecutor is permitted to argue only those inferences that can be reasonably derived from the evidence at trial."

---

[2]  We note that no ineffectiveness on counsel's part is asserted here.

[3]  In a footnote, since the matter was not raised, the *Simpson* Court also found unremarkable the trial court's admission of the evidence to which Appellant now objects concerning the gun. *Id.* at 1267 n3.

-4-

J. S47017/04

*Id.* at 1279 (citation omitted).  However, so long as there is support in the record for the objectionable comment, the Commonwealth will be "allow[ed] to advocate [its] position zealously." *Id.*  The trial court's denial of a mistrial motion based on a prosecutor's remarks will only be reversed where the unavoidable effect of those remarks "is to create hostility against the defendant such that the jury is hindered in its job of objectively weighing the evidence." *Id.* (citation omitted).  The *Simpson* Court, after recounting the facts of this case, found that "characterization of the murder as an execution was well within the bounds of acceptable prosecutorial advocacy." *Id.*

Appellant next assigns error to the court's refusal to charge the jury that "a defendant cannot be held culpable for first degree murder as an accomplice or conspirator unless he possessed the specific intent to kill." (Appellant's Brief at 15).  Appellant's claim is based on the court's alleged failure to articulate that specific intent must be personal to each defendant rather than common to the group in order to support a conviction for first degree murder.  However, while the principle is correct, as the *Simpson* Court points out, the jury's instructions included the following directive: "in order to find the defendants guilty of murder in the first degree, you must find that *the particular defendant had the specific intent to kill." Id.* at 1275 (emphasis in original).  The Court found, viewing the charge in its entirety, that the jury was adequately apprised that "Appellant could only be

-5-

J. S47017/04

convicted of first degree murder if he harbored the specific intent to take the victim's life." *Id.* at 1276.

Appellant next challenges both the sufficiency and weight of the evidence.   In fact, Appellant herein conflates the two concepts, characterizing the testimony of Raheema Washington as too unreliable and contradictory to provide the necessary quantum of evidence to support his conviction.   Despite this, our Supreme Court's conclusions are directly responsive to the first of these claims.   The Court determined that the evidence was sufficient to support the verdict in that "Appellant willingly and consciously participated in the killing of the victim," *id.* at 1269, that he conspired with others in perpetrating an abduction for ransom, and that the victim was murdered when the amount of money demanded by the conspirators was not forthcoming. *Id.*

However, the weight of evidence claim, was, as the Commonwealth points out, never raised before the trial court as Pa.R.Crim.P. 607 prescribes, either orally, by a written motion before sentencing or in a post sentence motion. It is therefore waived.[4] *Commonwealth v. Burkett*, 830 A.2d 1034, 1037 (Pa. Super. 2003).   Even were it not, assessment of credibility is a matter for the fact finder, which is free to accept all, part of

---

[4] The *Simpson* Court found that the verdict was not against the weight of the evidence because "the outcome of the trial below satisfies our society's common notions of fairness." *Id.* at 1270.

-6-

J. S47017/04

none of the evidence presented.   ***Commonwealth v. Valette***, 613 A.2d 548, 549 (Pa. 1992).

Judgment of sentence affirmed.

Judgment Entered:

Prothonotary

Date: _____ SEP - 9 2004

-7-

**Attachment B**

Commonwealth v. Malik Bowers
Court of Common Pleas of Philadelphia County
No. CP-51-CR-1103162-1996
Opinion of the Honorable William J. Mazzola
Filed March 20, 2009

## IN THE COURT OF COMMON PLEAS
### FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### TRIAL DIVISION - CRIMINAL SECTION

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **NOVEMBER TERM, 1996** |
| | : | **NO. 0316   2/2** |
| | : | |
| **vs.** | : | **CP-51-CR-1103162-1996** |
| | : | |
| | : | **SUPERIOR COURT** |
| **MALIK BOWERS** | : | **NO. 2703 EDA 2008** |

**FILED**

MAR 20 2009     **O P I N I O N**

Criminal Appeals Unit
First Judicial District of PA

**MAZZOLA, J.**                                        **MARCH 20 , 2009**


Barnaby C. Wittels, Esquire and Carole L. McHugh, Esquire have filed an appeal on behalf of the Petitioner addressing this Court's order denying his petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §9541 *et seq.*


## I. PROCEDURAL HISTORY


On December 17, 1997, after a jury trial before the Honorable David N. Savitt, Petitioner was found guilty of murder of the first degree, robbery, kidnapping, possessing an instrument of crime and criminal conspiracy. Following a death penalty hearing, the jury sentenced the Petitioner to life imprisonment. Judge Savitt further imposed a sentence of ten to twenty years imprisonment on the

robbery conviction, a consecutive term of ten to twenty years imprisonment on the kidnapping conviction, a consecutive term of five to ten years imprisonment on the conviction of conspiracy, and a consecutive term of two and one-half to five years on the possessing an instrument of crime conviction.

Petitioner filed a notice of appeal.[1]  The Superior Court affirmed the judgment of sentence on September 9, 2004. *Commonwealth v. Bowers*, 863 A.2d 1219 (Pa. Super. 2004). Petition for Allowance of Appeal was denied on June 1, 2005. *Commonwealth v. Bowers*, 583 Pa. 667, 876 A.2d 392 (2005).  No further appeal was taken.

On August 11, 2005, Barnaby C. Wittels, Esquire and Carole L. McHugh, Esquire, filed a petition for post conviction collateral relief on behalf of the Petitioner raising *inter alia* violations of due process by virtue of the prosecution's failure to provide Petitioner with alleged exculpatory material[2]; trial and appellate counsel's ineffectiveness for failing to investigate, discover and use facts regarding the victim's criminal history, as well as the criminal histories and/or cooperation of other prosecution witnesses and their previous testimony; failing to raise appropriate trial or post-trial *Brady* claims; failing to preserve and litigate the alleged racially motivated jury selection; failing to correctly and adequately raise error in the court's jury charge regarding accomplice and co-conspirator liability; failing to object to the prosecutor's closing argument; failing to object and properly argue the admission of Petitioner's connection

---

[1]  Following a series of dismissed appeals due to counsel's failure to file an appellate brief, Barbara McDermott, Esquire filed an appellate brief following Judge Savitt reinstating Petitioner's right to appeal nunc pro tunc on July 9, 2003.

[2] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2nd 215 (1963).

to the 9mm gun; and for failing to properly and adequately argue an insufficiency of the evidence argument. Petitioner also sought habeas corpus relief. After conducting a review of the record, this Court dismissed Petitioner's motion on August 20, 2008.[3] Counsel filed a timely Notice of Appeal.

## II. STANDARD OF REVIEW

The purpose of the P.C.R.A. is to afford collateral relief to those individuals convicted of crimes they did not commit and those serving illegal sentences. 42 Pa.C.S.A. § 9542. Pursuant to 42 Pa. C.S.A. § 9545(b), any petition filed under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves one of the exceptions enumerated in sections (b)(i)-(iii).

In determining whether counsel rendered ineffective assistance, the court must use a three-pronged test. First, the court must ascertain whether the issue underlying the claim has arguable merit. This requirement is based upon the principle that counsel will not be found ineffective for failing to pursue a frivolous claim or strategy. Second, if the petitioner's claim does have arguable merit, the court must determine whether the course chosen by counsel had some reasonable basis designed to serve the best interest of the petitioner. If a review of the record reveals that counsel was ineffective, the court must determine whether the petitioner has demonstrated that counsel's ineffectiveness worked to his prejudice. *Commonwealth v. Howard*, 538 Pa. 86,

---

[3] The dismissal occurred more than twenty days after Petitioner was served with notice of the forthcoming dismissal of his PCRA petition. Pa. R. Crim. P. 907.

645 A.2d 1300 (1994); *Commonwealth v. Hutchinson*, 521 Pa. 482, 556 A.2d 370 (1989); *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Pendola*, 416 Pa.Super. 568, 611 A.2d 761 (1992), *appeal denied*, 629 A.2d 1378 (Pa. 1993). Failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Hudson*, 820 A.2d 720, 726 (Pa. Super. 2003).

In order to establish prejudice, a petitioner must show that "counsel's ineffectiveness was of such magnitude that the verdict essentially would have been different absent counsel's alleged ineffectiveness." *Commonwealth v. Howard, supra.*, 645 A.2d at 1308. *See also Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In the context of a PCRA claim, petitioner must not only establish ineffective assistance of counsel, he must also plead and prove that counsel's stewardship "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *See* 42 Pa.C.S.A. §9543 (a)(2)(ii); *Commonwealth v. Buehl*, 540 Pa. 493, 658 A.2d 771 (1995); *Commonwealth v. Rowe*, 411 Pa.Super. 363, 601 A.2d 833 (1992).

Counsel is never ineffective for failing to make a frivolous objection or motion. *Commonwealth v. Groff*, 356 Pa.Super. 477, 514 A.2d 1382, 1386 (1986), *appeal denied*, 531 A.2d 428 (Pa. 1987); *Commonwealth v. Davis*, 313 Pa.Super. 355, 459 A.2d 1267, 1271 (1983). Similarly, counsel is never ineffective for failing to raise a frivolous issue in post-verdict motions or on appeal. *Commonwealth v. Thuy*, 424 Pa.Super. 482, 623 A.2d 327, 355 (1993); *Commonwealth v. Tanner*, 410 Pa.Super. 398, 600 A.2d 201, 206 (1991).

The law in Pennsylvania presumes that trial counsel was effective. *Commonwealth v. Quier*, 366 Pa.Super. 275, 531 A.2d 8, 9 (1987); *Commonwealth v. Norris*, 305 Pa.Super. 206, 451 A.2d 494, 496 (1982). Therefore, when a claim of ineffective assistance of counsel is made, it is the petitioner's burden to prove such ineffectiveness; that burden does not shift. *Commonwealth v. Cross*, 535 Pa. 38, 634 A.2d 173, 175 (1993), *cert. denied*, 115 S.Ct. 109, 130 L.Ed.2d 56 (Pa. 1994); *Commonwealth v. Marchesano*, 519 Pa. 1, 544 A.2d 1333, 1335-36 (1988); *Commonwealth v. Tavares*, 382 Pa.Super. 317, 555 A.2d 199, 210 (1989), *appeal denied*, 571 A.2d 382 (Pa. 1989).

## III. <u>DISCUSSION</u>

In his counseled petition, Petitioner has raised a plethora of issues regarding trial and appellate counsel's ineffectiveness. He also raises violations of both the United States and Pennsylvania Constitutions. After conducting an exhaustive review of the record and Petitioner's response thereto, this Court properly dismissed Petitioner's motion.

### *1.      Prosecutorial Misconduct*

Pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny, Petitioner alleges he was denied due process of law by virtue of the prosecution's misinformation and suppression of material information, specifically the alleged criminal activities of the decedent, Andrew Haynes and witness Aloysius Hall. Additionally, Petitioner alleges that

5

the prosecution denied him due process by the misinformation and suppression of material information, specifically the terms of witness Tracena Copper's cooperation with governmental authorities against Petitioner and failure to provide discovery related to Ms. Copper; as well as the prosecutor's prejudicial statements.  In his response to the Notice to Dismiss, Petitioner also claims prosecutorial misconduct in failing to correct false testimony by a Commonwealth witness and the Commonwealth's failure to disclose evidence relative to the credibility of its witnesses.

The standard for the grant of a new trial as a result of prosecutorial misconduct is very strict. Our appellate court has repeatedly stated that:

> "It is well established that a claim of prosecutorial misconduct will only constitute grounds for relief when the unavoidable effect of the contested comments was to prejudice the jury, forming in their minds, fixed bias and hostility toward the accused so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict."

*Commonwealth v. Murphy*, 657 A.2d 927 (Pa. 1995). *See also, Commonwealth v. Spotz*, 756 A.2d 1139 (Pa.2000), *Commonwealth v. Rios*, 721 A.2d 1049 (Pa. 1998).

Even when the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required absent the effect set forth in the *Murphy* case. *Commonwealth v. Stern*, 393 Pa. Super. 152, 573 A.2d 1132, 1137 (1990), *appeal denied*, 590 A.2d 297 (Pa. 1991), *citing Commonwealth v. Johnson*, 516 Pa. 527, 533 A.2d 994, 997 (1987).

In addition, a prosecutor's remarks fall within the bounds of fair comment if they are supported by the evidence and contain inferences which are reasonably derived from the evidence. *Commonwealth v. Duffey*, 519 Pa. 348, 548 A.2d 1178, 1184 (1988).  Furthermore, otherwise

improper remarks of a prosecutor are permissible when they merely counter the arguments made by defense counsel, since such remarks would not have the unavoidable effect of prejudicing the jury. *Commonwealth v. McGeth*, 424 Pa. Super. 321, 622 A.2d 940, 943 (1993), *aff'd* 636 A.2d 1117 (Pa. 1994). Finally, where the evidence of guilt is overwhelming, a prejudicial remark by the prosecutor is not grounds for reversal. *Commonwealth v. Carter*, 643 A.2d 61 (Pa. 1994).

Careful examination of the examples cited by the Petitioner as evidence of prosecutorial misconduct clearly exposes his claim to be without merit. The comments made by the prosecutor are consistent with the evidence presented by the Commonwealth at trial and represent fair comment countering the arguments of defense counsel underscoring both the burden of proof and the presumption of innocence. Furthermore, the information complained of was known or could have been known with reasonable diligence by the defense; therefore no *Brady* violation exists. *See Commonwealth v. Paddy*, 800 A.2d 294, 305 (Pa. 2002) (no *Brady* violation occurs where the defendant knew, or with reasonable diligence could have known of the evidence); *Commonwealth v. Johnson*, 580 Pa. 594, 600, 863 A.2d 423, 426-427 (2004) (as the record showed that appellant was already well aware of the information allegedly withheld by the Commonwealth, appellant has completely failed to establish that the Commonwealth violated *Brady*). Petitioner has not met his burden of proving that the effect of the remarks made by the prosecutor so prejudiced the jury that they were unable to weigh the evidence objectively, nor has he shown that the evidence complained of was unknown and therefore after-discovered *Brady* material.

7

Petitioner's next claim that the prosecutor committed prosecutorial misconduct by failing to correct what Petitioner has characterized as "false testimony" must also fail.  Prosecutorial misconduct in the form of failing to correct a witness' testimony was addressed in *Commonwealth v. Hallowell*, 477 Pa. 232, 383 A.2d 909 (1978).  In *Hallowell*, the testimony of a codefendant, the only eyewitness to the killing and robbery, was the cornerstone of the Commonwealth's case. The codefendant testified that he had no expectations of leniency when in fact he had been promised leniency.   The District Attorney failed to correct this testimony. Based on this codefendant's testimony, Hallowell was convicted of first-degree murder and aggravated robbery.  In granting a new trial, the Supreme Court held that a conviction obtained through the use of materially false testimony may not stand and the prosecuting attorney has an affirmative duty to correct the testimony of a witness which he knows to be false. *Id.* at 236, 237, 383 A.2d at 911.

In the instant case, a comparison of the prosecutorial misconduct in *Hallowell*, demonstrates substantial difference in the degree and nature of the misconduct.  In *Hallowell*, the District Attorney failed to disclose the bias of his chief witness; he failed to reveal that in exchange for his testimony the chief witness was promised leniency in another pending matter. Here, there is no failure to disclose the bias of witness Tracena Copper, as Copper was receiving nothing additional in exchange for her testimony.  She was a paid federal government informant; she was not a paid informant in the case *sub judice*.  Moreover, this material was revealed to the defense.

Also, Judge Savitt not only found there was no discovery violation, but also made Copper, her lawyer and law enforcement officials involved available to the defense for questioning. In *Hallowell*, the element of self-interest was present and the corresponding risk of perjury clearly

8

more serious. Such factors do not exist in the instant case. For the same reasons as stated above, Petitioner has also failed to show a *Brady* violation as to information regarding the alleged criminal activities of the decedent, Andrew Haynes and witnesses Aloysius Hall, Clayton Duncan and Stanley Hall, as Petitioner was aware of the information he now claims as the basis of his *Brady* violation claim.

## 2.    *Trial and Appellate Counsel's Ineffectiveness*

Petitioner alleges trial counsel's ineffectiveness and violations of both the United States and Pennsylvania Constitutions. According to Petitioner, trial counsel's ineffectiveness included failure to uncover *Brady* material; failing to raise *Brady/Napue* claims at trial or post-trial; failing to investigate, discover, and use facts concerning the decedent's criminal history, as well as witness Aloysius Hall's criminal history, and Tracena Copper's cooperation with governmental authorities prosecuting Petitioner; failing to request a continuance to further investigate Copper; failing to have the former testimony of unavailable witness Felicia Brokenbrough read to the jury to impeach witness Rasheema Washington's testimony regarding a time-line of when she saw the Petitioner; failing to impeach witnesses Stanley Hall, Clayton Duncan, Selvin Haynes and Rasheema Washington with their former testimony and statements; failing to object to the admission of testimony through Copper, Officer Slavin and Washington regarding Petitioner's connection to a certain nine millimeter gun; and failing to properly and correctly argue the insufficiency of the evidence.

Both trial counsel and appellate counsel were ineffective for failing to challenge the make-up of the jury venire, and for failing to object to the prosecutor's use of peremptory challenges. Petitioner argues that his Sixth Amendment guarantee of an impartial jury trial was violated because minorities were underrepresented on his jury venire panel. Other claims of counsel's ineffectiveness include failing to correctly object to the trial court's alleged erroneous instruction on accomplice and conspiratorial liability; failing to object to the prosecutor's improper arguments during closing argument; failing to distinguish Petitioner's arguments from "the losing arguments made in [codefendant Rasheed] Simpson's appeal to the Pennsylvania Supreme Court. He further alleges that he is entitled to relief because of the cumulative effect of the above errors. Finally, Petitioner contends that appellate counsel was ineffective for failing to raise on appeal all of the above-mentioned allegations of trial counsel's ineffectiveness as well as failing to raise the issue of prosecutorial misconduct and to "seek correction of the Superior Court's legal and factual errors in the subsequently filed petition for allowance of appeal." After reviewing the available record, this Court finds that the issues raised in the instant petition fail to merit relief under the P.C.R.A.

Petitioner's ineffectiveness claims fail at the outset because he cannot show that he was prejudiced by any of counsel's alleged omissions. In *United States v. Chronic*, 466 U.S. 648 (1984), the Court set forth three circumstances in which ineffective representation would violate a defendant's Sixth Amendment rights so severely that prejudice should be presumed: first, when the accused is denied counsel at a critical stage of the trial; second, when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and third, "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *Chronic*,

*supra.*, 466 U.S. at 659-60; *see also Bell v. Cone*, 535 U.S. 685, 695-96 (2002). Petitioner does not specify which exception he believes applies to his case; and for reasons discussed below, this Court can find no application of any of them to the instant matter.

The Supreme Court of the United States has noted that "the prejudice inquiry requires consideration of the 'the totality of the evidence before the judge or jury' on the question at issue." *Strickland v. Washington*, 466 U.S. at 695; *see also Commonwealth v. Spotz*, 2005 Pa. LEXIS 605, p. 33 n.15; 870 A.2d 822, 835 n.15 (2005). Instantly, even the most cursory review of the record shows that trial counsel did indeed subject the prosecution's case to adversarial testing. In fact, the record clearly reflects that trial counsel *did* advance most of the arguments that Petitioner claims were not presented and now seeks on collateral review to hold him ineffective for allegedly having failed to make.

Furthermore, despite Petitioner's argument to the contrary, a majority of the issues Petitioner now claims as counsel's ineffectiveness have been previously litigated. To be eligible for relief under the PCRA, a petitioner must establish that the allegation of error has not been previously litigated. 42 Pa.C.S.A. § 9543 (a)(3). "[T]he purpose of the PCRA is not to provide defendants with a means of re-litigating the merits of issues long since decided on direct appeal." *Commonwealth v. Buehl*, 540 Pa. 493, 500, 658 A.2d 771, 775 (1995). An issue has been previously litigated if the highest appellate court in which the petitioner could have had review has ruled on the merits of the issue. 42 Pa.C.S. § 9544 (a)(2). When the Superior Court has thoroughly discussed a petitioner's claims in an opinion affirming judgment of sentence, the issues have been finally determined and are not subject to further review in a post-conviction proceeding. *Commonwealth v.*

11

*Bond*, 630 A.2d 1281, 1282 (Pa. Super. 1993). Neither may a petitioner obtain post-conviction relief to re-litigate a previously litigated claim under the guise of counsel's ineffectiveness by presenting new theories of relief to support previously litigated claims. *Commonwealth v. Christi*, 540 Pa. 192, 202, 656 A.2d 877, 881 (1995).

The Superior Court rejected this claim and affirmed Petitioner's conviction on September 9, 2004. *See Commonwealth v. Malik Bowers*, 863 A.2d 1219 (Pa. Super. 2004) (unpublished opinion). Petitioner's argument thus runs afoul of the Post Conviction Relief Act that prohibits review of issues previously litigated. 42 Pa.C.S. § 9543(a)(3).

For the reasons previously stated and as this Court does not find any violation of *Brady* or its progeny, Petitioner's claim of counsel's ineffectiveness to investigate and discover *Brady* material (that counsel was aware of and used during trial), must also fail. Counsel will not be deemed ineffective for pursuing a particular strategy as long as the course chosen by counsel had some reasonable basis designed to serve the best interest of the petitioner. *See Commonwealth v. Rivers*, 567 Pa. 239, 252, 786 A.2d 923, 930 (2001). Petitioner's argument as to the testimony of unavailable witness Felicia Brokenbrough and the additional named witnesses fail for the same reasons.

Petitioner's argument that counsel was ineffective for failing to object to the trial court's alleged erroneous instruction on accomplice and conspiratorial liability must also fail. When reviewing a challenge to a jury instruction, an appellate court must review the charge as a whole. *Commonwealth v. Spotz*, 759 A.2d 1280 (Pa. 2000); *see also Commonwealth v. Jones*, 683 A.2d 1181 (Pa. 1996). An appellate court will uphold an instruction if it adequately and accurately reflects the law and is sufficient to guide the jury through its deliberations. *Id. citing Commonwealth v.*

12

*Ahlborn*, 657 A.2d 518, 520 (Pa. Super. 1995). Error will not be predicated on isolated excerpts. Instead, it is the general effect of the charge that controls. *Id. citing Commonwealth v. Zewe*, 663 A.2d 195, 201 (Pa. Super. 1995), *appeal denied*, 675 A.2d 1248 (Pa. 1996). An erroneous charge warrants the grant of a new trial unless the reviewing court is convinced beyond reasonable doubt that the error is harmless. *Id.*

In *Commonwealth v. Wayne*, 553 Pa. 614, 720 A.2d 456 (Pa. 1998), the Supreme Court examined the issue of whether a trial court properly instructed the jury as to conspiratorial liability in a case where the defendant also faced charges of first-degree murder. In addressing that matter, the Court noted that under general principles of conspiratorial liability a defendant can be held criminally responsible for the entirety of the acts of his co-conspirators performed in furtherance of the conspiracy regardless of whether the defendant intended that certain acts be undertaken. Stated differently, a defendant can be held accountable for the actions of his co-conspirators although the defendant did not specifically intend that the co-conspirators perform those acts. *Id.* The Court went on to contrast this rule of law with the specific intent requirement of first-degree murder: specific intent to kill was the particularly heinous element that made first-degree murder the only crime punishable by the imposition of death. In *Wayne* the Court recognized that there is a patent incongruity between conspiratorial liability, where a defendant can be held criminally responsible for acts he did not specifically intend to take place, and first-degree murder, where a defendant must maintain the specific intent to kill.

13

In reconciling the conflict between conspiratorial liability and the specific intent requirement of first-degree murder presented in *Wayne*, the Court concluded that a pure application of the principles of conspiratorial liability to the crime of first-degree murder would improperly relieve the Commonwealth of its burden of proving that the defendant personally maintained the specific intent to kill. Relying on the reasoning of its decisions in *Commonwealth v. Huffman*, 536 Pa. 196, 638 A.2d 961 (Pa. 1994) and *Commonwealth v. Bachert*, 499 Pa. 398, 453 A.2d 931 (Pa. 1982), the Court concluded that because of the seriousness of the penalty involved, the specific intent element of first-degree murder should be elevated above principles of conspiratorial liability. Consequently, the Court unambiguously stated, "To be guilty of first-degree murder, each co-conspirator must individually be found to possess the mental state necessary to establish first degree murder -- the specific intent to kill." *Wayne*, 720 A.2d at 464.

Here, not only has the Superior Court already addressed this issue, the record reveals that the trial court gave its general instructions on accomplice and conspiracy liability, as well as specifically instructed the jury on the elements of first-degree murder and that each defendant had to have the specific intent to kill. (N.T. 12/9/97, pp. 15-16; 12/16/97, pp. 6-7; 14, 22, 32-36, 55, 58-61). Moreover, following a request by the jury for further clarification the trial court further instructed the jury as follows: ". . . In order to find the defendants guilty of murder in the first degree, you must find that the particular defendant had the specific intent to kill and that the killing was a willful, deliberate and premeditated act." (N.T. 12/16/97, pp. 79-80). The law presumes that the jury will follow the instructions of the court. *Commonwealth v. Travers*, 768 A.2d 845 (Pa. 2001) *citing Commonwealth v. Travaglia*, 661 A.2d 352 (Pa. 1995).

14

The trial court specifically instructed the jury that they are permitted to consider all the evidence presented at trial. It was not within the providence of the court to instruct the jury to ignore evidence that was properly presented to them. Not the court, nor the Commonwealth, nor the Petitioner can now speculate as to what evidence the jurors found credible; what weight they afforded that evidence in rendering their verdict; or the reasons for the conclusion that Petitioner was guilty of some charges and not of others.

The Superior Court rejected this claim and affirmed Petitioner's conviction on September 9, 2004. Petitioner's argument thus runs afoul of the Post Conviction Relief Act that prohibits review of issues previously litigated. *42 Pa.C.S. § 9543(a)(3)*. Nevertheless, to the extent the court should find the issue of trial counsel's alleged ineffectiveness not previously litigated, Petitioner's claim is meritless.

Petitioner's claim that counsel was ineffective regarding the admissibility of his connection to the nine-millimeter gun, must also fail. Again, this issue has been addressed by the Superior Court on direct appeal and generally, all relevant evidence is admissible. Pa.R.E. 402. Otherwise relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury; or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Pa.R.E. 403. The admissibility of evidence is a matter addressed to the discretion of the trial court and may be reversed on appeal only upon a showing that the court abused its discretion. *Commonwealth v. Richter*, 711 A.2d 464, 466 (Pa. 1998). Moreover, it is well settled that juries are presumed to follow the instructions of a trial court to disregard inadmissible evidence. *Commonwealth v. Smith*, 562 Pa. 255 (2000);

15

*Commonwealth v. Miller*, 541 Pa. 531, 664 A.2d 1310, 1319 n.15 (1995), *cert. denied*, 516 U.S. 1122, 133 L. Ed. 2d 859, 116 S. Ct. 932 (1996).

Additionally, Petitioner's challenge to the sufficiency of the evidence has also been previously litigated. Nevertheless, a challenge to the sufficiency of the evidence is based upon whether the evidence and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as verdict-winner, is sufficient to establish all the elements     of the offense(s) beyond a reasonable doubt. *Commonwealth v. Walker*, 656 A.2d 90 (Pa. 1995); *Commonwealth v. Bracey*, 662 A.2d 1062 (Pa. 1995); *Commonwealth v. Burgos*, 610 A.2d 11 (Pa. 1992). The credibility of witnesses and the weight to be accorded the evidence produced are matters within the province of the trier of fact. The fact finder is free to believe all, some or none of the evidence. *Commonwealth v. Walker*, *supra.*, 656 A.2d at 97; *Commonwealth v. Smith*, 467 A.2d 1120 (Pa. 1983); *Commonwealth v. Nelson*, 467 A.2d 638 (Pa. Super. 1983); *Commonwealth v. Cody*, 584 A.2d 992 (Pa. Super. 1991); *appeal denied* 527 Pa. 622, 592 A.2d 42.

Here, the Superior Court and the Pennsylvania Supreme Court (in examining the same record in the case of Petitioner's codefendant and affirming his sentence), found the evidence sufficient. *See Commonwealth v. Simpson*, 562 Pa. 255, 754 A.2d 1264 (2000). This Court finds the Petitioner's claim to be meritless. There was sufficient evidence to convince the court beyond a reasonable doubt that the Petitioner, was guilty of committing the aforementioned criminal acts.

16

### 3.    *Batson Violation*

Petitioner claims counsel was ineffective for failing to challenge the makeup of the jury venire, and for failing to object to the prosecutor's use of peremptory challenges. Petitioner argues that his Sixth Amendment guarantee of an impartial jury trial was violated because minorities were underrepresented on his jury venire panel. However, mere under-representation of a minority group on a jury panel does not constitute unconstitutional discrimination *per se*. *Commonwealth v. Jones*, 465 Pa. 473, 480, 350 A.2d 862, 866 (1976) *citing Swain v. Alabama*, 380 U.S. 202, 208, 85 S. Ct. 824, 829, 13 L. Ed. 2d 759 (1965). To show that a jury selection system is unconstitutional, Petitioner must show that the procedures as designed or implemented are likely to result in juries unrepresentative of a cross-section of the community, or that the procedures have continually failed to represent certain identifiable groups over a period of time. *Commonwealth v. Jones, supra.*, 465 Pa. at 477, 350 A.2d at 865 (1976) *citing Commonwealth v. Butler*, 448 Pa. 128, 133, 291 A.2d 89, 91 (1972). Petitioner fails to make the requisite showing with his bare, unsubstantiated assertion that there <u>was</u> substantial basis for raising constitutional challenges to the venire. He makes no mention of the procedures that were utilized to obtain this venire panel, and completely absent is any substantiated contention that certain identifiable groups have been under represented over time. Petitioner is simply not entitled to relief on this claim.

Petitioner also argues that the Commonwealth unlawfully used its peremptory challenges to exclude prospective minority jurors from the final jury panel in violation of *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986). According to Petitioner, trial counsel was ineffective for failing to raise an appropriate *Batson* claim because the prosecutor allegedly used

his peremptory challenges to remove African-Americans based exclusively on the neighborhood in which the potential juror lived, was raised and/or went to school.  (PCRA Petition, pp. 5-11).

In order to establish a colorable *Batson* claim, a petitioner must first make a record identifying the race of the venire persons stricken by the Commonwealth, the race of prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury. *Commonwealth v. Simmons*, 541 Pa. 211, 231, 662 A.2d 621, 631 (1995) *citing Commonwealth v. Spence*, 534 Pa. 233, 246, 627 A.2d 1176, 1182-83 (1993). Here, Petitioner has failed to meet the threshold requirement of developing a record of the race of the prospective jurors acceptable to the Commonwealth but stricken by the defense.  Petitioner tries to establish that six of the jurors accepted by the Commonwealth were similar, but for race, to other jurors that were struck.  The mere exercise of preemptory strikes against members of a particular minority group alone does not establish a pattern of discrimination giving rise to an inference of a discriminatory purpose. *See Commonwealth v. Clark*, 710 A.2d 31, 41 (Pa. 1998); *Commonwealth v. Hill*, 727 A.2d 578, 582 (Pa. Super. 1999).  A review of the record in the instant case shows that during the 4 days of *voir dire*, consisting of 137 potential jurors, the prosecutor exercised only 13 of the 18 available peremptory strikes; he clearly could have struck each of these jurors if he was purposefully attempting to exclude African-Americans. *See Commonwealth v. Dennis*, 715 A.2d 404 (Pa. 1998). The final composition of the jury was six African-Americans, and six Caucasians.  The alternates consisted of two Caucasian women.  Petitioner has not stated a colorable *Batson* claim.

Additionally, Petitioner claims that all prior counsel failed to properly raise and litigate his *Batson* claims.  Petitioner's *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69

18

(1986) claim and his claim of a persistent policy of racial discrimination practiced by the Philadelphia District Attorney's Office in jury selection must also fail. To support his claim, Petitioner relies on notes taken from a 1990 lecture given by Assistant District Attorney Bruce Sagel and a videotaped lecture by Assistant District Attorney Jack McMahon in 1986. According to Petitioner, the notes and videotape from these lectures "unambiguously confirm that it was the policy and practice of the Philadelphia District Attorney's Office to discriminate against African-Americans and to 'avoid *Batson*' by developing pre-textual reasons for the strikes."

In *Batson*, it was held (1) that the equal protection clause forbids a prosecutor to use peremptory challenges against potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the prosecution's case against a black defendant; (2) that a criminal defendant may establish a *prima facie* case of purposeful racial discrimination in the selection of the jury based solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial without showing repeated instances of such discriminatory conduct over a number of cases; and (3) that once a defendant makes such a *prima facie* showing, the burden shifts to the prosecution to come forward with a race-neutral explanation for challenging the jurors. *Id.*

The United States Supreme Court in *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) held that the use of racially motivated challenges by either the prosecution or the defense is violative of the Equal Protection Clause of the United States Constitution. *See Commonwealth v. Garrett*, 456 Pa. Super. 60, 689 A.2d 912 (1997). Once a *prima facie* case of discrimination has been made, the burden shifts to the proponent of the challenge to articulate

19

a race-neutral explanation for excluding the juror in question. Once the court finds that the proponent has given a race-neutral explanation for the challenge, the burden shifts again to the objecting party to demonstrate racial discrimination. *Hernandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). Reasons given by the proponent which on their face appear to be clear, specific and legitimate may be found by the trial court to be pre-textual when considered in light of the entire *voir dire* proceeding. *Commonwealth v. Stern*, 393 Pa. Super. 152, 573 A.2d 1132 (1990). The determination of whether the reasons given for exercising the challenges are *bona fide* is a matter for the trial court, and its findings may be reversed only if they are not supported by the record or there is evidence that they are arbitrary and unreasonable. *Commonwealth v. Lloyd*, 376 Pa. Super. 188, 545 A.2d 890, 895 (1988).

Initially, the Petitioner in the case *sub judice* has failed to make a record sufficient to meet his burden of proof. This jury was in fact composed of six (6) Caucasians and six (6) African Americans. In *Commonwealth v. Lambert*, 529 Pa. 320, 603 A.2d 568 (1992), a death penalty appeal, the Supreme Court reaffirmed its decision in *Commonwealth v. Abu-Jamal*, 521 Pa. 188, 555 A.2d 846 (1989), *cert. denied*, 111 S.Ct. 215 (1990), that a defendant must make a sufficient record in order to state a cognizable *Batson* claim. The Supreme Court in *Abu-Jamal* held that such factors as whether black potential jurors acceptable to the Commonwealth had been stricken by the defense; whether black jurors served on the jury where the Commonwealth had peremptory strikes remaining; and the specific race of the potential jurors stricken by the parties are all critical to establishing a cognizable claim to a *prima facie* case under *Batson*. Absent a record sufficiently establishing such specifics, the Court held, no relief could issue. In *Lambert*, the Court cited and

20

reaffirmed *Abu-Jamal*, noting that no basis for a *Batson* claim exists where "the defendant never made any request of the court to record the race or racial appearance of any juror" during trial. *Lambert, supra.,* at 338, 603 A.2d at 577. Under the above authorities, Petitioner has failed to make a record sufficient to support a finding of a *prima facie* case for *Batson* purposes.

Furthermore, Petitioner's claims of discrimination in jury selection, referring specifically to the handwritten notes of Assistant District Attorney Gavin Lentz taken while Lentz attended a lecture given by Assistant District Attorney Bruce Sagel ("Sagel lecture") in August 1990, as well as the McMahon tapes, have been repeatedly denounced by the appellate courts of Pennsylvania. *See Commonwealth v. Williams*, 581 Pa. 57, 87; 863 A.2d 505 (2004); *Commonwealth v. Morris*, 573 Pa. 157, 179-80; 822 A.2d 684 (2003), *Commonwealth v. Marshall*, 570 Pa. 545, 575-76, 810 A.2d 1211, 1228 (2002), *Commonwealth v. Lark*, 560 Pa. 487, 495, 746 A.2d 585 (2000), *Commonwealth v. Rollins*, 558 Pa. 532, 546; 738 A.2d 435, 443 n.10 (1999).

Moreover, it has been established that at no time during his lecture, did Assistant District Attorney Bruce Sagel advocate the violation of *Batson*. He advocated that the prosecutors comply with *Batson*, that they not strike a black juror without a nondiscriminatory reason, and that they record that reason in anticipation of any future *Batson* challenge. Based on the foregoing, this Court finds no evidence that a policy of discrimination was in place at the time of Petitioner's trial and that there was no violation of *Batson*. Petitioner is not entitled to relief on this claim.

### 4.   *Cumulative Effect of the Above Issues*

Petitioner argues that he is entitled to relief because of the cumulative effect of the above errors.  According to Petitioner, collectively and cumulatively, these errors denied Petitioner his rights to due process of law and his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Pennsylvania Constitution. Petitioner cannot be prejudiced by non-existent errors and, therefore, no relief is due on this issue. No number of failed claims may collectively attain merit if each could not do so individually. *Commonwealth v. Williams*, 615 A.2d 716, 722 (Pa. 1992), *Commonwealth v. Ellis*, 700 A.2d 948, 962 n6 (Pa. Super. 1997), *Commonwealth v. Baez*, 554 Pa. 66 (1998).

### 5.   *Failure to Raise the Above Issues in a Post-Sentence Motion*

Finally, Petitioner contends that appellate counsel was ineffective for failing to raise all of the above-mentioned allegations of trial counsel's ineffectiveness on appeal.  Counsel will never be found ineffective for failing to raise frivolous issues on appeal.  Moreover, counsel has no duty to raise every possible claim on appeal.  It is the job of counsel to decide which issues to present to an appellate court for review.  Appealing losing issues only serves to bury the stronger claims raised on behalf of a defendant.  Therefore, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661 (1986) *quoting Jones v. Barnes*, 463 U.S. 745, 751-753, 103 S.Ct. 3308 (1983), *Commonwealth v. Laboy*, 460 Pa. 466,

333 A.2d 868 (1975).  Consequently, since trial counsel was not ineffective, Petitioner's claim is devoid of merit.

## IV. <u>CONCLUSION</u>

Petitioner has thus failed to demonstrate any basis for relief.  In the absence of any meritorious challenge that can be found in the reviewable record, Petitioner has failed to articulate his allegation in accordance with the requisites of a claim predicated upon counsel's ineffectiveness. Therefore, no relief is due.

For the reasons set forth above, Petitioner's motion for post-conviction collateral relief was properly dismissed.

BY THE COURT:

_____

WILLIAM J. MAZZOLA,   J.

23

**Attachment C**

Commonwealth v. Malik Bowers
Superior Court Memorandum Opinion
No. 2703 EDA 2008
Filed December 31, 2009

J. S77008/09

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MALIK BOWERS, | : | |
| | : | |
| Appellant | : | No. 2703 EDA 2008 |

Appeal from the PCRA Order Entered August 20, 2008,
Court of Common Pleas, Philadelphia County,
Criminal Division, at No. CP-51-CR-1103162-1996.

BEFORE:  ORIE MELVIN, SHOGAN and POPOVICH, JJ.

MEMORANDUM:                    **FILED DECEMBER 31, 2009**

Appellant, Malik Bowers, appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

On direct appeal, this Court summarized the underlying facts of this case as follows:

> The charges stem from Appellant's participation in the December 1993 kidnapping for ransom of one Andrew Haynes.  The victim was abducted from in front of his apartment building, and brought, bound and with a hat over his face, to the residence of Raheema Washington[,] from where the kidnappers telephoned the victim's family demanding that $20,000 be paid to them within 15 minutes.  When the family was unable to comply, the victim was shot four times in the back of the head and his body dumped in a vacant lot.

A week after the murder, while the co-conspirators and others attended a movie, police officers patrolling the theatre parking lot noticed that their vehicle lacked a license plate, and upon looking inside saw a gun protruding from under the front seat of the car.  When the group returned to the vehicle, Appellant was arrested and the gun seized.  Appellant was not arrested for the killing until July of 1996, when Ms. Washington came forward with information about the crime.  [Appellant] was then tried jointly with co-conspirator Rasheed Simpson, who received the death sentence.[1]

> [1] A third conspirator was tried separately and convicted of second degree murder and related offenses, while a fourth has never been identified.

**Commonwealth v. Bowers**, 2468 EDA 2003, slip op. at 1-2 (Pa. Super. filed September 9, 2004) (unpublished memorandum).

The PCRA court offered the following procedural history of this case:

On December 17, 1997, after a jury trial before the Honorable David N. Savitt, [Appellant] was found guilty of murder of the first degree, robbery, kidnapping, possessing an instrument of crime and criminal conspiracy.  Following a death penalty hearing, the jury sentenced [Appellant] to life imprisonment.  Judge Savitt further imposed a sentence of ten to twenty years imprisonment on the robbery conviction, a consecutive term of ten to twenty years imprisonment on the kidnapping conviction, a consecutive term of five to ten years imprisonment on the conviction of conspiracy, and a consecutive term of two and one-half to five years on the possessing an instrument of crime conviction.

[Appellant] filed a notice of appeal.[1]  The Superior Court affirmed the judgment of sentence on September 9, 2004.  . . . Petition for Allowance of Appeal was denied on June 1, 2005.  **Commonwealth v. Bowers**, 583 Pa. 667, 876 A.2d 392 (2005).  No further appeal was taken.

J. S77008/09

[1] Following a series of dismissed appeals due to counsel's failure to file an appellate brief, Barbara McDermott, Esquire filed an appellate brief following Judge Savitt reinstating [Appellant's] right to appeal nunc pro tunc on July 9, 2003.

On August 11, 2005, Barnaby C. Wittels, Esquire and Carole L. McHugh, Esquire, filed a petition for post conviction collateral relief on behalf of [Appellant] raising *inter alia* violations of due process by virtue of the prosecution's failure to provide [Appellant] with alleged exculpatory material[2]; trial and appellate counsel's ineffectiveness for failing to investigate, discover and use facts regarding the victim's criminal history, as well as the criminal histories and/or cooperation of other prosecution witnesses and their previous testimony; failing to raise appropriate trial or post-trial **Brady** claims; failing to preserve and litigate the alleged racially motivated jury selection; failing to correctly and adequately raise error in the court's jury charge regarding accomplice and co-conspirator liability; failing to object to the prosecutor's closing argument; failing to object and properly argue the admission of [Appellant's] connection to the 9mm gun; and for failing to properly and adequately argue an insufficiency of the evidence argument. [Appellant] also sought habeas corpus relief. After conducting a review of the record, this Court dismissed [Appellant's PCRA] motion on August 20, 2008.[3] Counsel filed a timely Notice of Appeal.

[2] **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2nd 215 (1963).

[3] The dismissal occurred more than twenty days after [Appellant] was served with notice of the forthcoming dismissal of his PCRA petition. Pa.R.Crim.P. 907.

PCRA Court Opinion, 3/20/09, at 1-3.

Appellant now presents the following issues for our review:

I.    Did the PCRA court err by denying without a hearing [Appellant's] claim of trial counsel ineffectiveness for failing to

-3-

J. S77008/09

utilize the former testimony of unavailable witness Felicia [Brockenbrogh] and other Commonwealth witnesses?

II.    Did the court below err by refusing to hold an evidentiary hearing on [Appellant's] claim of trial counsel ineffectiveness for failing to object and make a full record concerning the prosecution's racially discriminatory use of its peremptory strikes?

III.    Did the court below err in failing to grant an evidentiary hearing upon [Appellant's] claim of trial and direct appeal counsel ineffectiveness for failing to (a) correctly litigate [Appellant's] meritorious objection to the jury charge relating to co-conspirator liability for first degree murder, and (b) object to the prosecutor's related arguments to the jury?

IV.    Did the court below err in failing to grant an evidentiary hearing on [Appellant's] claim of direct appeal counsel ineffectiveness for failing to competently litigate the sufficiency of the evidence?

V.    Did the court below err in failing to grant an evidentiary hearing on [Appellant's] claim of trial and direct appeal counsel ineffectiveness, for failing to properly litigate [Appellant's] meritorious arguments against admission of testimony purporting to connect him to a certain firearm?

VI.    When evaluating the prejudice resulting from the various constitutional claims set forth above, is it necessary to consider their cumulative effects?

VII.    Did the court below err by failing to hold an evidentiary hearing, given that this timely, first PCRA petition raises multiple issues of material fact?

Appellant's Brief at 2 (renumbered for purposes of review).

The proper standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported

-4-

J. S77008/09

by the evidence of record and is free of legal error. ***Commonwealth v. Ragan***, 592 Pa. 217, 220, 923 A.2d 1169, 1170 (2007). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. ***Commonwealth v. Carr***, 768 A.2d 1164, 1166 (Pa. Super. 2001). Moreover, a PCRA court may decline to hold a hearing on the petition if the PCRA court determines that the petitioner's claim is patently frivolous and is without a trace of support in either the record or from other evidence. ***Commonwealth v. Jordan***, 772 A.2d 1011, 1014 (Pa. Super. 2001). A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and denying relief without an evidentiary hearing. ***Id.***

Appellant first argues that trial counsel was ineffective for failing to use the testimony of Felicia Brockenbrogh, a witness in a previous trial of one of Appellant's co-conspirators, to impeach the testimony offered by Ms. Washington regarding the time frame of the crimes committed on the evening in question. Appellant argues that, although Brockenbrogh testified in an earlier trial, she was not available to testify in Appellant's trial. Appellant contends that trial counsel should have had Brockenbrogh's testimony from the earlier trial read to the jury in order to impeach the time-line currently offered by Ms. Washington. Appellant believes that the

-5-

J. S77008/09

testimony would have proven that the Commonwealth's witnesses "made a coordinated and mutually consistent alteration in their testimonies, as given at [Appellant's] trial – dramatically changing the alleged time of the events so as to accommodate the tale told by a new witness, [Ms. Washington], in order to implicate [Appellant] in the killing." Appellant's Brief at 22. Appellant further contends that trial counsel was ineffective for failing to impeach witnesses Clayton Duncan, Selvan Haynes, and Aloysius Hall with their prior accounts of the events on the night of the murder.

In order to succeed on a claim of ineffective assistance of counsel, an appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused the appellant prejudice. **Commonwealth v. Pierce**, 567 Pa. 186, 203, 786 A.2d 203, 213 (2001). Prejudice requires proof that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. **Id**. When it is clear that an appellant has failed to meet the prejudice prong of his ineffective assistance of counsel claim, the claim may be disposed of on that basis alone, without a determination of whether the first two prongs have been met. **Commonwealth v. Baker**, 880 A.2d 654, 656 (Pa. Super. 2005).

J. S77008/09

To prevail on a claim of trial counsel's ineffectiveness for failure to call a witness, an appellant must prove: "(1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant." ***Commonwealth v. Chmiel***, 585 Pa. 547, 622, 889 A.2d 501, 545-546 (2005) (citations omitted). Trial counsel's failure to call a particular witness does not constitute ineffective assistance without some showing that the absent witness' testimony would have been beneficial or helpful in establishing the asserted defense. ***Id***. Appellant must demonstrate how the testimony of the uncalled witness would have been beneficial under the circumstances of the case. ***Id***. In addition, counsel is not ineffective for failing to call a witness whose testimony would have been merely cumulative. ***Commonwealth v. Meadows***, 567 Pa. 344, 359, 787 A.2d 312, 320 (2001).

Our review of the record reflects that, at a previous trial, Brockenbrogh testified regarding the abduction of the victim from in front of his apartment building. At the previous trial, Brockenbrogh explained that she was walking up the street on the night in question and came upon the victim as he was talking to people in front of his residence. N.T., 10/4/95,

-7-

J. S77008/09

at 17-18.  The victim called out to Brockenbrogh and asked her to walk with him to the store so he could get some "weed" and some "cooking oil."  *Id*. at 18.  Brockenbrogh went with the victim to the store and explained that, when they returned to the victim's street, gunshots were fired and the victim was abducted from the street by people who forced the victim into a car.  *Id*. at 18-19.   Brockenbrogh explained that she could not identify the kidnapper who was outside of the vehicle because he had a wool hat pulled so far down his face that all she could see were his lips and nose.  *Id*. at 20.  After the kidnapping, Brockenbrogh rang the victim's doorbell and informed the victim's family of what had happened.   *Id*. at 19-20.   When Brockenbrogh was asked what time she had seen the victim, she imprecisely replied, "Say about 10:00, 10:30; somewhere around there."  *Id*. at 17.

Our review of the record further reflects that Ms. Washington was unsure of the exact time of the crimes she witnessed in her apartment, except to say that they were in the evening after she had returned home from work.  N.T., 12/12/97, at 10-11, 42.  Given that Brockenbrogh was also vague about the exact time she saw the victim, we cannot agree with Appellant that this testimony would have impeached the eyewitness testimony offered by Ms. Washington at Appellant's trial.   Therefore, Appellant has failed to establish that the absence of this evidence prejudiced

-8-

J. S77008/09

Appellant.[1]  Consequently, Appellant has failed to establish trial counsel was ineffective in this regard.

In addition, Appellant argues that trial counsel was ineffective for failing to more fully cross-examine Commonwealth witnesses to exploit alleged inconsistencies in their testimony.  Specifically, Appellant contends that witnesses Clayton Duncan, Aloysius Hall and Selvan Haynes gave testimony that differed from their previous accounts of the incident and which could have been challenged with more cross-examination by defense counsel.

This Court has long stated that "trial decisions, especially those pertaining to the nature and extent of cross-examination, are matters of style and tactics involving subtle stratagems which ordinarily are within the exclusive province of the trial counsel." *Commonwealth v. Smolko*, 666 A.2d 672, 680 (Pa. Super. 1995) (quoting *Commonwealth v. Petras*, 534 A.2d 483, 487 (Pa. Super. 1987)).  "So long as counsel's tactical decisions may be objectively viewed as having a reasonable basis designed to

---

[1] Interestingly, our review of the record indicates that Ms. Washington explained that, when the victim was brought to her apartment on the night in question, his hands and legs were tied, and, there was a hat pulled over his head and face "down to his nose."  N.T., 12/12/97, at 15-16.  This testimony is similar to that offered by Brockenbrogh at the previous trial explaining that she could not identify the abductor because the abductor had a hat pulled down to his nose.  N.T., 10/4/95, at 20.  Thus, we are left to question whether Brockenbrogh's testimonial evidence would have been, in actuality, more prejudicial than exculpatory.

effectuate the client's interest, his stewardship cannot be deemed ineffective and the defendant cannot be said to have been denied a fair trial." **Petras**, 534 A.2d at 487.

Our review of the record reflects trial counsel indeed cross-examined each of the witnesses presented by the Commonwealth, including the witnesses mentioned by Appellant. **See** N.T., 12/10/97, at 55-71; N.T., 12/11/97 at 6-11, 13-14, 43-63, 80-83. During each of the periods of cross-examination, trial counsel attempted to uncover alleged inconsistencies in their versions of events. The extent to which defense counsel persisted with cross-examination was a matter left to trial counsel's strategy. Appellant has failed to prove prejudice based upon the level of cross-examination undertaken by trial counsel. Thus, Appellant has failed to establish that trial counsel was ineffective, and his contrary claim lacks merit.

Appellant next argues that there were racially motivated standards in the jury selection process and that trial counsel was ineffective for failing to object and make a record of the prosecution's discriminatory use of peremptory strikes. Specifically, Appellant claims that he has proffered sufficient evidence to establish a *prima facie* case of discriminatory jury selection and that trial counsel should have objected to the procedure and preserved the issue.

-10-

J. S77008/09

We turn to the following relevant standard applicable in evaluating post-conviction challenges to trial counsel's assistance in regard to the jury selection process:

> The High Court's 1986 [**Batson v. Kentucky**, 476 U.S. 79 (1986),] decision revolutionized jury selection processes by overruling prior case law and allowing an individual defendant to show that he was denied equal protection by the prosecutor's improper exercise of peremptory challenges in a racially discriminatory manner in his individual case. **Commonwealth v. Sneed**, 587 Pa. 318, 899 A.2d 1067 (Pa. 2006). Under **Batson**, once the objecting party makes out a *prima facie* case of discrimination, the burden shifts to the striking party to provide a race-neutral explanation for the challenge. **Id**. At the time of appellees' trial, **Batson** was decided and it was incumbent upon counsel to raise and preserve any legitimate claim related to alleged discrimination in jury selection. As stated previously, counsel failed to press a claim under **Batson**. In such circumstances in which no contemporaneous **Batson** objection was raised at trial, this Court has stressed that the **Batson** framework does not apply. **See Commonwealth v. Uderra**, 580 Pa. 492, 862 A.2d 74, 87 (Pa. 2004); **Commonwealth v. Jones**, 597 Pa. 286, 951 A.2d 294 (Pa. 2008). Rather, "in order to succeed on an unpreserved claim of racial discrimination in jury selection … a post-conviction petitioner may not rely on a *prima facie* case under **Batson**, but must prove actual, purposeful discrimination by a **preponderance** of the evidence **in addition to all other requirements essential to overcome the waiver of the underlying claim**." **Commonwealth v. Collins**, 598 Pa. 397, 957 A.2d 237, 259 (Pa. 2008) (emphasis added), quoting **Uderra**, *supra*.

**Commonwealth v. Daniels**, 600 Pa. 1, 42, 963 A.2d 409, 434 (2009).

Here, Appellant argues that he has presented a *prima facie* case of discriminatory conduct under **Batson** and completely ignores the more stringent requirements set forth under **Uderra**. Rather, Appellant

-11-

challenges the applicability of **Uderra** and related Pennsylvania Supreme Court cases and contends that the case law applying **Uderra** is in conflict with controlling United States Supreme Court case law.  **See** Appellant's Brief at 45-48.  Thus, Appellant attempts to circumvent the fact that he has failed to establish actual, purposeful discrimination by a preponderance of the evidence in this matter by asking this Court to consider his claim under **Batson**.  However, as mentioned above, our Supreme Court specifically stated "a post-conviction petitioner may not rely on a *prima facie* case under **Batson**, but must prove actual, purposeful discrimination by a preponderance of the evidence." **Daniels**, 600 Pa. at 42, 963 A.2d at 434.

We are mindful that the formal purpose of the Superior Court is to maintain and effectuate the decisional law of the Supreme Court as faithfully as possible. **Commonwealth v. Dugger**, 506 Pa. 537, 545, 486 A.2d 382, 386 (1985).  Accordingly, it is not within our purview to usurp the authority of the Pennsylvania Supreme Court and alter the standards required of Appellant to obtain relief under this claim.  Therefore, we decline Appellant's invitation to address the merits of his claim under an improper standard and are constrained to conclude that Appellant, by failing to prove purposeful discrimination by a preponderance of the evidence as required by **Uderra**,

has failed to establish that trial counsel was ineffective for failing to object to the jury selection process.[2]

Appellant next argues trial counsel and appellate counsel were ineffective for failing to properly litigate an objection to the trial court's jury instruction concerning co-conspirator liability for first degree murder and failing to object to the prosecutor's related argument to the jury. Appellant claims the instructions given on first degree murder, accomplice and co-conspirator liability, and the definition of conspiracy itself, confused the jury into believing Appellant could be found guilty of first degree murder by transferred intent if he participated in a conspiracy to commit robbery. Appellant contends that previous counsel did not properly present this issue to the trial court and on direct appeal.

Our review of the record reveals that, in essence, the issue of jury instructions related to the element of intent necessary to prove the crime of first degree murder has been previously litigated in Appellant's direct appeal to this Court. In reviewing the propriety of the jury instructions, this Court addressed the merits of the jury charge related to the requirement that Appellant possess the specific intent to kill in order to be culpable for first

_____

[2] We note that, to the extent Appellant argues the Philadelphia County District Attorney's office established a pattern of discrimination in the jury selection process of cases it prosecuted, we agree with the PCRA court that our case law has held that such bald claims fail to establish prejudice in a particular case. **See** PCRA Court Opinion, 3/20/09, at 21.

degree murder.   In a memorandum decision filed on September 9, 2004, this Court stated:

> Appellant next assigns error to the [trial] court's refusal to charge the jury that "a defendant cannot be held culpable for first degree murder as an accomplice or conspirator unless he possessed the specific intent to kill."  (Appellant's Brief at 15). Appellant's claim is based on the court's alleged failure to articulate that specific intent must be personal to each defendant rather than common to the group in order to support a conviction for first degree murder.  However, while the principle is correct, as the [**Commonwealth v.**] **Simpson**[, 562 Pa. 255, 754 A.2d 1264 (2000)] Court points out, the jury's instructions included the following directive: "in order to find the defendants guilty of murder in the first degree, you must find that *the particular defendant had the specific intent to kill.*"  *Id*. at 1275 (emphasis in original).  The Court found, viewing the charge in its entirety, that the jury was adequately apprised that "Appellant could only be convicted of first degree murder if he harbored the specific intent to take the victim's life."  ***Id***. at 1276.

**Bowers**, 2468 EDA 2003, slip op. at 5-6.  Because the underlying issue of adequate jury instructions related to the necessary element of intent for a conviction of first degree murder was previously litigated on direct appeal, it is not cognizable under the PCRA.  *See Commonwealth v. Hutchins*, 760 A.2d 50, 55 (Pa. Super. 2000) (stating that a PCRA petitioner cannot obtain PCRA review of previously litigated claims by presenting those claims again in a PCRA petition and setting forth new theories in support thereof).

Moreover, even if this issue had not been previously litigated, we would conclude that it lacks merit.  When it is clear that an appellant has failed to meet the prejudice prong of an ineffective assistance of counsel

claim, the claim may be disposed on that basis alone, without a determination of whether the first two prongs have been met. *Baker*, 880 A.2d at 656.   As stated above, prejudice requires proof that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Pierce*, 567 Pa. at 203, 786 A.2d at 213.  In addition, we presume that juries follow the instructions put to them by a trial court.  *Commonwealth v. Passrelli*, 789 A.2d 708, 713 (Pa. Super. 2001). *See also Commonwealth v. Brown*, 567 Pa. 272, 289, 786 A.2d 961, 971 (1999) (stating that "[t]he law presumes that the jury will follow the instructions of the court").

Our review of the record reflects that Appellant has failed to establish that he was prejudiced by the jury instructions.  In addressing this claim, the PCRA court made the following observations:

Here, not only has the Superior Court already addressed this issue, the record reveals that the trial court gave its general instructions on accomplice and conspiracy liability, as well as specifically instructed the jury on the elements of first-degree murder and that each defendant had to have the specific intent to kill.  (N.T. 12/9/97, pp. 15-16; 12/16/97, pp. 6-7; 14, 22, 32-36, 55, 58-61).  Moreover, following a request by the jury for further clarification[,] the trial court further instructed the jury as follows: "... In order to find the defendants guilty of murder in the first degree, you must find that the particular defendant had the specific intent to kill and that the killing was a willful, deliberate and premeditated act."  (N.T. 12/26/97, pp. 79-80). The law presumes that the jury will follow the instructions of the court.  *Commonwealth v. Travers*, 768 A.2d 845 (Pa. 2001) *citing Commonwealth v. Travaglia*, 661 A.2d 352 (Pa. 1995).

PCRA Court Opinion, 3/20/09, at 14.  We agree with the PCRA court that, upon considering the instructions given to the jury which we have concluded were proper, Appellant has failed to establish that there is a reasonable probability that, but for counsel's failure to object to the instructions, the outcome of the proceeding would have been different.  Therefore, this claim lacks merit.

Appellant next argues that his direct appeal counsel was ineffective for failing to competently litigate his claim challenging the sufficiency of the evidence.  Essentially, Appellant contends that appellate counsel should have argued that the testimony offered by Ms. Washington failed to prove beyond a reasonable doubt the necessary element of specific intent to kill.  Thus, Appellant attempts to have this court review a claim that was previously decided in Appellant's direct appeal.

As we stated above, a PCRA petitioner cannot obtain PCRA review of previously litigated claims by presenting those claims again in a PCRA petition and setting forth new theories in support of their issue.  **Hutchins**, 760 A.2d at 55.  Here, Appellant attempts to relitigate his challenge to the sufficiency of the evidence by asserting that previous counsel did not properly argue the issue on direct appeal.  Because, on direct appeal, we reviewed the sufficiency of the evidence presented at trial and concluded

-16-

J. S77008/09

that the evidence presented was sufficient, we decline Appellant's invitation to further review this issue.[3]

Appellant next argues that trial and appellate counsel were ineffective for failing to properly litigate Appellant's objection to the admission of testimony concerning Appellant's possession of a gun. Appellant argues that the evidence was inappropriate because there was no indication that the gun was similar to the murder weapon.

Regarding the admissibility of evidence of possession of an instrument of crime similar to that utilized to commit the crime, we turn to the following well settled statement of the law:

> The accused's possession of an implement or weapon giving him the means to carry out the crime constitutes some evidence of the probability that he committed the crime and is a relevant part of the Commonwealth's case. As the interval of time between the possession of the instrument of crime and the criminal event lengthens, the probative value of the evidence may become more tenuous, but that consideration is one for the jury to resolve in evaluating the weight of the evidence; the competency of the evidence is not affected. The lack of positive identification that the [instrument] was the actual weapon used likewise affects the weight of the evidence and not its admissibility.

*Commonwealth v. Clark*, 421 A.2d 374, 376 (Pa. Super. 1980) (citations omitted).

---

[3] Moreover, we observe that, had we reviewed this issue of appellate counsel's ineffectiveness, we would have concluded that Appellant has failed to establish that he suffered the requisite prejudice necessary to prove his claim of ineffective assistance because he has failed to prove that the outcome of the proceedings would have been different.

-17-

J. S77008/09

As our Supreme Court noted in its Opinion addressing the direct appeal of Appellant's co-conspirator:

> Because of the condition of the bullet fragments taken from the victim's head, the Commonwealth's firearms expert was unable to determine conclusively whether the gun seized by the Montgomery County authorities was the weapon that produced the four wounds to the victim's head. However, the trial court allowed the Commonwealth to present the weapon, a nine-millimeter, Chinese-manufactured lugar, as evidence at trial. *See Commonwealth v. Spotz*, 552 Pa. 499, 716 A.2d 580, 590 (Pa. 1998) ("The Commonwealth need not establish that a particular weapon was actually used in the commission of a crime in order for it to be introduced at trial. Rather, the Commonwealth needs to show sufficient circumstances to justify an inference by the finder of fact that the particular weapon was likely to have been used in the commission of the crime charged.") (citation omitted).

*Commonwealth v. Simpson*, 562 Pa. 255, 262 n.3, 754 A.2d 1264, 1267 n.3 (2000).

Indeed, our review of the record reflects that the Commonwealth was unable to establish the exact type of firearm used to murder the victim. However, there is no question that the victim died as a result of suffering four gunshots to the head. Thus, Appellant's possession of a weapon giving him the means to carry out the crime constitutes some evidence of the probability that he committed the crime and is a relevant part of the Commonwealth's case.

Furthermore, Appellant's allegation of remoteness of Appellant's possession of the gun does not affect its probative value. The record reflects

-18-

J. S77008/09

that, at trial, Tracena Cooper testified that in September of 1993, five weeks prior to the murder, she purchased a 9 millimeter handgun for Appellant. N.T., 12/12/97, at 126-132. The same gun was confiscated from the vehicle Appellant was occupying eight days after the murder. *Id.*; N.T., 12/11/97, at 106-108. Therefore, the evidence substantiated Appellant was in possession of the same gun both before and after the murder in question, and Appellant's argument lacks merit. Accordingly, Appellant's claim that trial and appellate counsel were ineffective for improperly arguing this issue fails.

Appellant next argues that the cumulative effect of the errors alleged herein denied him a fair trial. However, our Supreme Court has repeatedly stated that "no number of failed claims may collectively attain merit if they could not do so individually." *Commonwealth v. Lopez*, 578 Pa. 545, 556, 854 A.2d 465, 471 (2004) (quoting *Commonwealth v. Williams*, 532 Pa. 265, 278, 615 A.2d 716, 722 (1992)). Because we have held that there were no errors warranting relief, Appellant's allegation of cumulative error fails.

Finally, Appellant argues that the PCRA court erred in failing to hold an evidentiary hearing. However, a PCRA hearing is not a matter of right, and the PCRA court may decline to hold a hearing if there is no genuine issue concerning any material fact, and the defendant is not entitled to relief as a

-19-

J. S77008/09

matter of law. ***Commonwealth v. Morrison***, 878 A.2d 102, 109 (Pa. Super. 2005), *appeal denied*, 585 Pa. 688, 887 A.2d 1241 (2005); ***see*** Pa.R.Crim.P. 907(2).

Here, the record belies Appellant's claim that his previous counsel were ineffective. Thus, an evidentiary hearing was not required.

Order affirmed.

Judgment Entered.

Prothonotary

Date:_____

-20-

**Attachment D**

Malik Bowers v. David D. DiGuglielmo
United States District Court for the Eastern District of Pennsylvania
No. 2:10-cv-00432-TMG
Report and Recommendation
United States Magistrate Judge L. Felipe Restrepo
Filed May 19, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MALIK BOWERS                          :        CIVIL ACTION
                                      :
        v.                            :
                                      :
DAVID D. DIGUGLIELMO, et al.          :        NO.  10-0432


## REPORT AND RECOMMENDATION

L. FELIPE RESTREPO                                    MAY 19, 2010
UNITED STATES MAGISTRATE JUDGE


Before the Court is a counseled[1] Petition for Writ of Habeas Corpus filed by Malik

Bowers pursuant to 28 U.S.C. § 2254.  Petitioner has also filed a motion for stay.  He is currently

incarcerated at the State Correctional Institution in Graterford, Pennsylvania ("SCI-Graterford").

For the reasons which follow, the habeas petition should be dismissed without prejudice.


### PROCEDURAL HISTORY

The habeas petition alleges that on December 17, 1997, following a jury trial in the Court

of Common Pleas of Philadelphia, Bowers was convicted of First Degree Murder, Robbery,

Kidnaping, Criminal Conspiracy, and Possession of an Instrument of Crime.  See Hab. Pet. ¶¶ 1-

6. Petitioner alleges that he was sentenced on December 22, 1997 to life in prison for the murder

conviction, ten to twenty (10-20) years in prison for robbery, ten to twenty (10-20) years for

Kidnaping, five to ten (5-10) years for conspiracy, and two and a half (2 ½) to five (5) years in

────────────

1. Petitioner appears to be represented by two attorneys in this case and in the proceedings
related to his post-conviction petition pending in the Supreme Court of Pennsylvania, see Pa.
Supreme Ct. Dckt. No. 37 EAL 2010 at 1.

prison for the weapons offense, all to run consecutively to each other but concurrently with the life sentence for murder. Id. ¶¶ 1-4.

Bowers appealed to the Superior Court of Pennsylvania, and on September 9, 2004, the Superior Court affirmed the judgment of conviction, id. ¶ 9(a)-(d). On June 1, 2005, the Supreme Court of Pennsylvania denied allowance of appeal, id. ¶ 9(e). See Commonwealth v. Bowers, 863 A.2d 1219 (Pa. Super. Sep. 9, 2004) (table), allocatur denied, 583 A.2d 667 (Pa. June 1, 2005) (table).

Petitioner alleges that on August 11, 2006 he initiated proceedings under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa. C.S. §§ 9541-46. See Petr.'s Br. Supp. Mot. for Stay at 2; Hab. Pet. ¶ 11(a). The PCRA Court denied the petition on August 20, 2008, and Bowers appealed to the Superior Court. Id.; Petr.'s Mot. for Stay (Doc. 2) at 2. Bowers represents and the state court docket reflects that on December 31, 2009 the Superior Court affirmed the denial of PCRA relief, id. at 2; Pa. Supreme Ct. Dckt. No. 37 EAL 2010 (hereinafter cited as "Pa. Supreme Ct. Dckt.") at 2, and on January 22, 2010, Bowers filed a petition for allowance of appeal in Pennsylvania's Supreme Court, id. at 2; Petr.'s Mot. for Stay at 2. That petition is currently pending. Id. at 2-3; Pa. Supreme Ct. Dckt. at 1-3.

On January 29, 2010, Bowers filed this counseled § 2254 petition and his Motion for Stay. His habeas petition challenges the underlying state-court conviction. See Hab. Pet. ¶ 12. The Motion for Stay acknowledges that he has not satisfied the exhaustion requirement for all of his habeas claims. See Petr.'s Mot. for Stay at 2-4. In particular, he alleges that his federal habeas claims are still pending before the Supreme Court of Pennsylvania and that he will still have eighteen (18) days of the federal habeas statute of limitations remaining when his state court

proceedings are no longer pending. Id. Nonetheless, he requests that the Court stay his federal habeas petition due to the possibility that notification of the Pennsylvania Supreme Court's determination could be "accidentally delayed." Id. at 3.

## DISCUSSION

Under the federal habeas statute, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1); Alongi v. Ricci, 2010 WL 663630, *3 (3d Cir. Feb. 25, 2010) (quoting § 2254(b)(1)); see also Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing § 2254(b)(1)(A)) ("It is axiomatic that a federal habeas court may not grant a petition for a writ of habeas corpus unless the petitioner has first exhausted the remedies available in the state courts."), cert. denied, 532 U.S. 919 (2001); Toulson v. Beyer, 987 F.2d 984, 986 (3d Cir. 1993). In the event that a federal court determines that there exists a possibility of state court review, the petition should be dismissed without prejudice. See Banks v. Horn, 126 F.3d 206, 213 (3d Cir. 1997); Toulson, 987 F.2d at 987; see also Rose v. Lundy, 455 U.S. 509 (1982); Coady v. Vaughn, 251 F.3d 480, 489 (3d Cir. 2001) (citing Lines v. Larkins, 208 F.3d 153, 163 (3d Cir. 2000), cert. denied, 531 U.S. 1082 (2001)) ("Thus, in cases where there is any doubt about the availability of a state remedy, the claim must be dismissed.").

Requiring exhaustion of state remedies "addresses federalism and comity concerns by 'afford[ing] the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" Lambert, 134 F.3d. at 513 n.18 (quoting

3

Toulson, 987 F.2d at 986). Therefore, although the exhaustion rule is a matter of comity and not

jurisdiction, it should not be treated as a "mere formality." Burkett v. Love, 89 F.3d 135, 137 (3d

Cir. 1996); see Caswell v. Ryan, 953 F.2d 853, 857 (3d Cir. 1992) (quoting Landano v. Rafferty,

897 F.2d 661, 668 (3d Cir. 1990)) (the exhaustion requirement "should be strictly adhered to

because it expresses respect for our dual judicial system"), cert. denied, 504 U.S. 944 (1992).

The petitioner has the burden of proving all facts entitling him to a discharge from

custody as well as demonstrating that he has met all procedural requisites entitling him to relief.

Brown v. Cuyler, 669 F.2d 155, 157 (3d Cir. 1982). Thus, "[t]he habeas petitioner bears the

burden of proving that he has exhausted available state remedies." Toulson, 987 F.2d at 987.

Here, Bowers acknowledges that he has failed to satisfy the exhaustion requirement. In

that Bowers' petition for allowance of appeal is currently pending in the Supreme Court of

Pennsylvania and he has failed to demonstrate that state court review of his claims is unavailable,

his § 2254 petition should be dismissed without prejudice for failure to exhaust state court

remedies. See Coady, 251 F.3d at 489 (citing Lines, 208 F.3d at 163); Banks, 126 F.3d at 213;

Toulson, 987 F.2d at 987. It cannot properly be said that "state law clearly forecloses state court

review" of each his claims. See Lines, 208 F.3d at 163.

Furthermore, a stay of this civil action is not warranted. In Rhines v. Weber, 544 U.S.

269 (2005), the Supreme Court considered the issue of whether a federal district court had the

discretion to stay a habeas petition to allow the petitioner to present his unexhausted claims to the

state court in the first instance, and then to return to federal court for review of his petition. Id. at

271. Rhines observed that the enactment of the Antiterrorism and Effective Death Penalty Act of

1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, preserved the "total exhaustion"

requirement while imposing a 1-year statute of limitations on the filing of federal petitions, see

28 U.S.C. § 2244(d).  Rhines, 544 U.S. at 274.

      In ruling on the propriety of a stay and abeyance of a federal habeas petition, the Supreme

Court emphasized that "stay and abeyance should be available **only in limited circumstances**."

Rhines, 544 U.S. at 277 (emphasis added).  The Supreme Court feared that liberal use of the

"stay-and-abeyance" procedure might undermine AEDPA's "twin purposes": "encouraging the

swift execution of criminal judgments and favoring the resolution of habeas claims in state court,

if possible, **before** resorting to federal review."  Heleva v. Brooks, 581 F.3d 187, 190 (3d Cir.

2009) (quoting Rhines, 544 U.S. at 276-78) (emphasis added); see also Rhines, 544 U.S. at 276

(Although "AEDPA does not deprive district courts of [the] authority to issue stays, "it does

circumscribe their discretion.").  Rhines specifically pointed out that AEDPA "reinforce[d] the

importance of Lundy's 'simple and clear instruction to potential litigants: before you bring any

claims to federal court, be sure that you first have taken each one to state court."  Id. at 276-77

(citing Lundy, 455 U.S. at 520).  "Therefore, Rhines mandated that a district court should grant a

stay **only** where 'the petitioner had good cause for his failure to exhaust, his unexhausted claims

are potentially meritorious, and there is no indication that the petitioner engaged in intentionally

dilatory litigation tactics.'"  Heleva, 581 F.3d at 190 (quoting Rhines, 544 U.S. at 278).

      The petitioner in Rhines requested a stay in that he did not have a petition pending in the

state courts while his federal habeas petition was pending, and AEDPA's statute of limitations

continued to run during the pendency of his federal petition.[2]  Indeed, more than two years later,

---

2. As Rhines pointed out, although AEDPA's limitations period is tolled during the pendency of
a "properly filed application for State post-conviction or other collateral review," Rhines, 544
U.S. at 274 (quoting 28 U.S.C. § 2244(d)(2)), "the filing of a petition for habeas corpus in federal

5

by the time the federal District Court issued its Opinion finding that the habeas petition included unexhausted claims, AEDPA's statute of limitations had expired. "As a result, if the District Court had dismissed Rhines' mixed petition[3] at that point, he would have been unable to refile in federal court after exhausting the unexhausted claims." Id. at 272-73.  Of course, unlike Rhines, in this case, Bowers' attorneys acknowledge that the federal habeas limitations period is being tolled during the pendency of his state court petition and that once the petition in state court is no longer pending, Bowers will have 18 days to file his federal habeas petition.  See Petr.'s Br. Supp. Mot. for Stay at 2.

In Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005), the Supreme Court noted that "[a] petitioner's reasonable confusion about whether a state filing would be timely (and thus toll AEDPA's statute of limitations) will ordinarily constitute 'good cause' for him to file [a 'protective' petition] in federal court." Id. at 416 (citing Rhines, 544 U.S. at 278) (parenthetical added).  Here, unlike Pace, Bowers' attorneys do not allege any reasonable confusion about whether the pending state court petition was "properly filed" for purposes of § 2244(d)(2).

This is not a case where the petitioner alleges reasonable confusion about state filing requirements or where the statute of limitations is running or has run and expired during the pendency of the federal habeas petition.  See, e.g., Pace, 544 U.S. at 416; Rhines, 544 U.S. at 278.  Nor does Bowers present the scenario on which the Court of Appeals specifically reserved judgment as to whether it **may** qualify as good cause - "a habeas petition with **only hours**

---

court does not toll the statute of limitations." Id. at 274-75 (citing Duncan v. Walker, 533 U.S. 167, 181-82 (2001)).

3. A mixed petition contains both exhausted and unexhausted claims. See Toulson, 987 F.2d at 985 n.1.

remaining in the AEDPA limitations period." Heleva, 581 F.3d at 192 n.3 (emphasis added).

Moreover, Bowers, who is represented by two attorneys, acknowledges that he will have 18 days

to re-file his federal habeas petition once his state petition is no longer pending. See Petr.'s Br.

Supp. Mot. for Stay 2-3.

This is not an example of the "limited circumstances" in which a stay is warranted, see

Rhines, 544 U.S. at 277. Under the specific circumstances in this case, Bowers has failed to

satisfy the "good cause" requirement for filing a "protective" habeas petition, by demonstrating,

for example, the kind of "reasonable confusion about state filing requirements that [the Supreme

Court] categorized as 'good cause' for a stay." Heleva, 581 F.3d at 192 (citing Pace, 544 U.S. at

416); see Harris v. Beard, 393 F. Supp.2d 335, 339 (E.D. Pa. 2005) (ruling that the petitioner did

not have reasonable confusion about the timeliness of his state petition); cf. Heleva, 581 F.3d at

192 n.3 ("we reserve judgment on whether the scenario laid out by Heleva - a habeas petition

with only hours remaining in the AEDPA limitations period - may qualify as good cause").

Petitioner's assertion, under the circumstances in this case, that notification from Pennsylvania's

Supreme Court regarding its disposition of Bowers' petition for allowance of appeal may be

"accidentally delayed" is not the kind of demonstration of good cause which warrants the stay-

and-abeyance discussed in Rhines and Pace.

Bowers has failed to show that dismissal without prejudice of his § 2254 petition would

imperil his ability to file another timely and otherwise proper federal habeas petition **after his**

**state court remedies have been exhausted**. See Crews v. Horn, 360 F.3d 146, 152 (3d Cir.

2004). Dismissal of Bowers' habeas petition, without prejudice, is appropriate in light of his

currently-pending petition for allowance of appeal in Pennsylvania's Supreme Court.

Under § 2253(c)(1), "an appeal may not be taken to the court of appeals" from the final order in a § 2254 proceeding "[u]nless a . . . judge issues a [COA]." 28 U.S.C. § 2253(c)(1)(A). "A COA may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2); see Miller-EL v. Cockrell, 123 S. Ct. 1029, 1039 (2003); Slack v. McDaniel, 529 U.S. 473, 483 (2000).  When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the habeas petitioner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; **and** (2) whether the district court was correct in its procedural ruling.  Slack, 529 U.S. at 484; see Miller-EL, 123 S. Ct. at 1046 (Scalia, J., concurring).

"Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack, 529 U.S. at 484.  Here, in light of Bowers' petition currently pending in the Supreme Court of Pennsylvania, a plain procedural bar is present, namely his failure to exhaust state remedies, and a reasonable jurist could not conclude that it would be improper for this Court to dismiss the petition without prejudice for failure to exhaust state court remedies.  See Slack, 529 U.S. at 484. Accordingly, the habeas petition should be dismissed without prejudice, and a COA should not issue.

My Recommendation follows.

8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

May 20, 2010

RE:    BOWERS  v. DIGUGLIELMO, ET AL
       CA No. 10-CV-432

**NOTICE**

Enclosed herewith please find a copy of the Report and Recommendation filed by United States Magistrate Judge Restrepo, on this date in the above captioned matter. You are hereby notified that within fourteen (14) days from the date of service of this Notice of the filing of the Report and Recommendation of the United States Magistrate Judge, any party may file (in duplicate) with the clerk and serve upon all other parties written objections thereto (See Local Civil Rule 72.1 IV (b)). **Failure of a party to file timely objections to the Report & Recommendation shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court Judge.**

In accordance with 28 U.S.C. §636(b)(1)(B), the judge to whom the case is assigned will make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The judge may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge, receive further evidence or recommit the matter to the magistrate judge with instructions.

Where the magistrate judge has been appointed as special master under F.R.Civ.P 53, the procedure under that rule shall be followed.

MICHAEL E. KUNZ
Clerk of Court

By: s/ James Deitz
      James Deitz, Deputy Clerk

cc:    B. Wittles Esq.
       C. McHugh, Esq.

       Courtroom Deputy to Judge Golden

civ623.frm
(11/07)

**Attachment E**

Malik Bowers v. David D. DiGuglielmo
United States District Court for the Eastern District of Pennsylvania
No. 2:10-cv-00432-TMG
Order by the Honorable Thomas M. Golden
Dated July 1, 2010 and Filed July 6, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MALIK BOWERS                  :     CIVIL ACTION
                                  :
                 Petitioner      :
vs.                          :
                                  :     NO.  10-CV-0432
                                  :
DAVID D. DIGUGLIELMO,        :
*Superintendent, SCI Graterford*, et al.    :
                                  :
                 Respondents    :

## ORDER

AND NOW, this 1st day of July, 2010, upon a de *novo* review[1] of Magistrate Judge L.

Felipe Restrepo's Report and Recommendation and Petitioner's Objections thereto, it is hereby

ORDERED that:

    1.      The Report and Recommendation (Doc. No. 4) is ADOPTED and APPROVED;

    2.      Petitioner's Motion to Stay (Doc. No. 2) is DENIED;

    3.      Petitioner's Objections (Doc. No. 5) are OVERRULED;[2]

---

[1]Section 636 of Title 28 of the U.S. Code governs the jurisdiction, power, and temporary assignments of United States Magistrate Judges. Subsection (b)(1) provides:

    A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1).

[2]In his objections to the Report and Recommendation, Petitioner asserts that Magistrate Judge Restrepo erred in concluding that Petitioner failed to show "good cause" for a stay. Petitioner contends that the Magistrate Judge acted in a manner contrary to law when he concluded that the eighteen days remaining on Petitioner's Antiterrorism and Effective Death Penalty Act ("AEDPA"), 22 U.S.C. § 2241, et seq., limitations period did not warrant granting a stay. In support of his request for a stay, Petitioner notes the United States District Court for the Middle District of Pennsylvania ("MDPA") granted a stay to an individual with thirty days remaining on his AEDPA limitations period, twelve days more than Petitioner will have at his disposal after he has exhausted his state court remedies.

4.      The Petition for Writ of Habeas Corpus (Doc. No. 1) is DISMISSED without prejudice;

5.      There is no basis for the issuance of a certificate of appealability; and,

6.      The Clerk of Courts is DIRECTED to CLOSE the within matter for statistical purposes.

BY THE COURT:


*/s/ Thomas M Golden*
THOMAS M. GOLDEN, J.

---

Although Petitioner correctly recalled the MDPA's decision, that court, in granting petitioner's stay, noted that respondents' counsel expressly waived opposition to petitioner's request. Heleva v. Brooks, No. 07-CV-1398, 2009 LEXIS 114684, at *1 (M.D. Pa. 2009). Unlike the Heleva respondents, the present Respondents have not asserted a position on Petitioner's Motion for a Stay. It is important to note that Respondents are not obligated to respond to the Motion because the Court has not ordered Respondents to respond to the Petition. Moreover, the Supreme Court has stressed that "stay and abeyance should be available only in limited circumstances." Rhines v. Weber, 544 U.S. 269, 277 (2005). An eighteen-day window in which to file his Petition upon completion of his state court proceedings is sufficient and does not constitute a limited circumstance. See, e.g., McIntyre v. Quarterman, No. 09-CV-0574, 2009 WL 1563516 (N.D. Tex. June 2, 2009) (denying stay where seventeen days remained in the AEDPA limitations period); Arroyo v. Director, TDCJ-CID, No. 09-CV-447, 2009 WL 3807242 (E.D. Tex. Nov. 12, 2009) (seven days); Rideout v. Rader, No. 08-1864, 2009 WL 3428829 (W.D. La. Oct. 23, 2009) ("AEDPA was days away from elapsing."); Phillips v. Diguglielmo, No. 05-3476, 2005 WL 2562775 (E.D. Pa. Oct. 11, 2005) (thirteen days). Moreover, "[s]ince [Petitioner] has already prepared his federal Petition, it should be a simple matter for him to resubmit it as a new case with updated exhaustion information once he has fully exhausted state court remedies on all his claims." Harms v. Goddard, No. 09-CV-3274, 2010 WL 194661, at *2 (D. Kan. Jan. 14, 2010). Staying the proceedings would be inappropriate under these circumstances.

-2-

**CERTIFICATE OF SERVICE**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MALIK BOWERS** | : | **CIVIL ACTION** |
|     **Petitioner** | : | |
|   **v.** | : | |
| | : | |
| **MICHAEL WENEROWICZ, et al.** | : | **NO.** |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody has this day been served on the following persons by first class mail:

Thomas Dolgenos, Esquire
Chief, Federal Litigation Unit
Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
215-686-5703

Dated: September 23, 2013

BARNABY C. WITTELS, ESQUIRE

# LaCheen Wittels & Greenberg LLP
## Attorneys and Counsellors at Law

1429 Walnut Street, 13th Floor
Philadelphia, Pennsylvania 19102
———

Stephen Robert LaCheen*
Barnaby C. Wittels
Mark S. Greenberg**
Michael L. Doyle**

(215) 735-5900
FAX (215) 561-1860

George E. Goldstein
(1936-1997)

\* MEMBER PA AND FL BARS
\*\*MEMBER PA AND NJ BARS

September 23, 2013

U.S. District Court
Clerk, Room 2609
U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

Re:  Malik Bowers v. Michael Wenerowicz, et al.

Dear Sir or Madam:

Enclosed please find the original and five copies of the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody along with the filing fee of $5 in the above captioned matter.  Please time stamp and return four copies.

Thank you for your kind attention in this regard.

Respectfully yours,

BARNABY C. WITTELS

BCW/ds
Enclosure
cc:  Carole L. McHugh, Esquire
     ADA Thomas Dolgenos
     Malik Bowers