**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MALIK BOWERS** | : | **CIVIL ACTION** |
| Petitioner, | | |
| | | |
| **V.** | : | |
| | | |
| **MICHAEL WENEROWICZ, et al.** | : | **No. 13-5550** |
| Respondents. | | |

<u>**RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS**</u>

*TABLE OF CONTENTS*

I.    INTRODUCTION ...........................................................................................3

II.   FACTUAL BACKGROUND .........................................................................3

III.  PROCEDURAL BACKGROUND .................................................................5

IV.   DISCUSSION .................................................................................................9

      A.    Standards Governing Petitioner's Claims for Relief ..........................9

            1.    Standards Governing Exhaustion and Default. ...........................9

            2.    Requirements for Relief under Section 2254(d) and Strickland. ...............11

      B.    Petitioner's Claims Do Not Entitle Him to Relief. ...........................15

            1.    Petitioner's due process challenge to the trial court's instructions
                  on accomplice and conspiratorial liability for first-degree murder is
                  procedurally defaulted and, in any event, meritless...................15

            2.    The state courts reasonably rejected petitioner's meritless claim that
                  trial and direct appeal counsel were ineffective for failing to properly
                  litigate an objection to the trial court's jury instructions ...........................19

            3.    The state courts reasonably rejected petitioner's meritless claim that
                  trial counsel was ineffective for not pursuing additional avenues of
                  impeachment in cross-examining the Commonwealth's witnesses. .........20

            4.    The state courts reasonably rejected petitioner's challenge to the
                  sufficiency of the evidence .......................................................24

            5.    The state courts reasonably rejected petitioner's meritless claim that
                  direct appeal counsel was ineffective in developing his challenge to the
                  sufficiency of the evidence .......................................................27

6.   The state courts reasonably rejected petitioner's claim that trial counsel was ineffective for failing to raise a Batson objection ................28

7.   Petitioner's due process challenge to the admission of evidence that he possessed a gun is procedurally defaulted and unreviewable....................33

8.   The state courts reasonably rejected petitioner's meritless claim that trial and direct appeal counsel were ineffective for the manner in which they argued that evidence that petitioner possessed a gun was inadmissible ................................................................................................35

9.   The state courts reasonably rejected petitioner's claim of cumulative prejudice........................................................................................................36

C.   **A Certificate of Appealability Should Not Issue.**..............................................37

V.   **CONCLUSION** .................................................................................................................38

## I.      INTRODUCTION

Petitioner is a Pennsylvania state prisoner who was convicted of first-degree murder, criminal conspiracy, kidnapping, robbery, and possession of an instrument of crime by a jury in 1997 and sentenced to a term of life imprisonment (Docket No. CP-51-CR-1103162-1996). Before the Court is his application for federal habeas relief pursuant to 28 U.S.C. § 2254. Because the nine claims asserted in his petition and memorandum of law are procedurally defaulted and/or reasonably rejected by the state courts as meritless, petitioner is not entitled to habeas relief. Respondents respectfully request that this Court deny the petition with prejudice, without a hearing, and without the issuance of a certificate of appealability.

## II.     FACTUAL BACKGROUND

At about 8:45 p.m. on December 8, 1993, Allister Durrante (a.k.a. "Trinidad"), went to 18th and Tioga Streets in Philadelphia where the victim, Andrew Haynes, lived. Haynes spoke to Durrante and then returned to his apartment. Ten minutes later, Haynes went out to get some cooking oil, and never returned. On his way home, he was chased at gunpoint, grabbed, forced into a waiting car, and driven away (N.T. 12/10/97, 44-61; 12/11/97, 15-20; 12/12/97, 93).

Minutes later, petitioner called his friend, Rasheema Washington, and told her he was on his way to her apartment at 1419 West Allegheny Avenue. He arrived a short time later with the victim and three co-conspirators, co-defendant Rasheed Simpson, whom Washington had known for five years, Durrante, and another man. The armed kidnappers had bound Haynes's legs, tied his hands behind his back, put a sock in his mouth, and pulled his hat over his head. They kicked and beat him as he lay helplessly on the floor, demanding to know where "the money" was. Co-defendant Simpson and Durrante used the telephone in Washington's bedroom to make a ransom demand. After about one-half hour, petitioner noticed that Washington was upset. The kidnappers left, taking the victim with them (N.T. 12/12/97, 5-21, 60, 70).

Stanley Hall and Clayton Duncan lived in the victim's building. They went to his apartment when they learned of the kidnapping. Within minutes of their arrival, the phone rang. Hall answered and co-defendant Simpson identified himself as "Rasheed," the man who had robbed Hall six weeks earlier. During that robbery, Simpson had forced Hall to reveal the victim's whereabouts. Simpson told Hall that if he did not produce $20,000 in fifteen minutes, the victim would be killed. Hall telephoned the victim's mother and summoned his brother, Selvan. Selvan Haynes arrived and received a second call from the kidnappers fifteen minutes later. Again, one of the kidnappers declared that they had the victim and intended to kill him unless they received $20,000. Selvan Haynes tried to reason with the kidnappers, pleading that it would be impossible to obtain such a large sum in such a short time. The caller exclaimed that the group was not joking and he abruptly ended the call (N.T. 12/11/97, 20-50, 64, 67-79, 84).

Before returning to his mother's home, Selvan Haynes arranged to have incoming calls to his brother's apartment forwarded to his mother's phone. He soon received another call from the kidnappers. Haynes offered them $3,000 in cash and his two vehicles. The kidnappers rejected the offer. They called Selvan again and permitted him to speak to his brother. The victim begged his brother to do something to save his life. The group called a final time, repeating their demands. Neither Haynes nor Hall had any further contact with the kidnappers (N.T. 12/11/97, 20-50, 64, 67-79, 84).

At about midnight that same day, Philadelphia Police Officer Frank Hayes responded to a report of a dead body found in a rubble-strewn vacant lot at 18th and Somerset Streets, close to both Washington's residence and the site of the abduction. Police found the victim with his hands tied behind his back; he was barefoot, and a blue knit hat partially covered his face. He had been shot four times in the head (N.T. 12/9/97, 60-73, 106; 12/10/97, 29-41; 12/11/97, 147-63).

On December 16, 1993, one week after police discovered the victim's body, co-defendant Rasheed Simpson drove petitioner and Rasheema Washington, along with two others, to a Montgomery County movie theater. While the group was in the theater, a police officer patrolling the parking lot noticed that the vehicle in which the group had arrived did not have a license plate. When searching the car's dashboard for a vehicle identification number, the officer noticed a gun protruding from underneath the front seat of the car. The officer called for backup and three additional officers joined in his surveillance of the vehicle. When petitioner, co-defendant Simpson, Washington and the others returned to the vehicle, the officers ordered the group from the car. Ultimately, Montgomery County authorities arrested petitioner and seized the gun.[1] Co-defendant Simpson, Washington, and the others were permitted to leave (N.T. 12/11/97, 99-112, 121, 139; 12/12/97, 24-26, 81-88, 168-75).

In June, 1996, Rasheema Washington divulged to police the details surrounding the kidnappers' arrival at her apartment and the group's actions during that time. Based in large part on that interview, along with earlier statements Haynes and Hall had given police after the victim's body was discovered, police arrested petitioner and co-defendant Simpson in July, 1996 (N.T. 12/15/97, 6-15).

## III.   PROCEDURAL BACKGROUND

Petitioner was tried jointly with co-conspirator Rasheed Simpson by a jury sitting before the Honorable David N. Savitt in the Philadelphia Court of Common Pleas. On December 17, 1997, the jury convicted him of first-degree murder, criminal conspiracy, kidnapping, robbery, and possession of an instrument of crime. After deliberating as to the penalty, on December 22, 1997, the jury sentenced petitioner to life imprisonment. Judge Savitt then sentenced him to consecutive terms of imprisonment of ten to twenty years for robbery, ten to twenty years for

---

[1]   Because of the condition of the bullets taken from the victim's head, it could not be conclusively determined whether this gun was the murder weapon (N.T. 12/12/97, 168-75).

kidnapping, five to ten years for criminal conspiracy, and two and one-half to five years for possession of an instrument of crime.

Louis Savino, Jr., Esquire, who represented petitioner at trial, filed a notice of appeal but the appeal was dismissed on July 27, 1999, due to his failure to file a brief. On November 19, 1999, petitioner filed a PCRA petition seeking reinstatement of his appellate rights. Edward C. Meehan, Jr., Esquire, was appointed to represent him. On April 12, 2000, Judge Savitt granted that petition and on May 11, 2000, petitioner filed a nunc pro tunc appeal. On October 16, 2000, the appeal was dismissed due to counsel's failure to file a brief.

On March 6, 2001, petitioner retained Mr. Meehan, and filed another PCRA petition requesting reinstatement of his appellate rights nunc pro tunc. On June 25, 2001, petitioner filed notice of appeal. On October 15, 2001, petitioner's appeal was dismissed for failure to file a brief.

On October 9, 2002, petitioner, still represented by Mr. Meehan, filed yet another PCRA petition seeking a nunc pro tunc appeal. Barbara McDermott, Esquire, was appointed and, on May 22, 2003, filed an amended petition. On July 9, 2003, Judge Savitt reinstated petitioner's appellate rights.

Petitioner appealed to the Pennsylvania Superior Court (Petitioner's Superior Court Direct Appeal Brief, attached hereto as Exhibit A). On appeal, he argued that: (1) the trial court erred by admitting evidence of petitioner's possession of a firearm; (2) the trial court erred in refusing a motion for a mistrial following the prosecutor's closing argument; (3) the trial court erred in instructing the jury on accomplice liability for first-degree murder; (4) the evidence was insufficient to sustain the guilty verdicts; and (5) the verdicts were against the weight of the evidence.

On September 9, 2004, the Superior Court affirmed petitioner's judgments of sentence. Commonwealth v. Bowers, No. 2465 EDA 2003 (unpublished memorandum) (Superior Court Direct Appeal Opinion, attached hereto as Exhibit B). Petitioner filed a petition for allowance of appeal, and the Pennsylvania Supreme Court denied further review on June 1, 2005. Commonwealth v. Bowers, 876 A.2d 392 (Pa. 2005) (No. 498 EAL 2004).

On August 11, 2006, petitioner filed a counseled PCRA petition. After sending Petitioner a notice of the court's intention to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907, the PCRA court dismissed the petition on August 20, 2008.

Petitioner again appealed to the Pennsylvania Superior Court. On appeal, he asserted that: (1) he was entitled to an evidentiary hearing; (2) trial counsel was ineffective for the manner in which he cross-examined the Commonwealth's witnesses; (3) trial counsel was ineffective for not raising a Batson objection; (4) trial and direct appeal counsel were ineffective for the manner in which they argued that the jury charge on conspiratorial liability for first-degree murder was erroneous; (5) direct appeal counsel was ineffective for the manner in which she contested the sufficiency of the evidence; (6) trial and direct appeal counsel were ineffective for the manner in which they challenged the admission of evidence that petitioner possessed a gun; and (7) petitioner was entitled to relief based upon the cumulative effect of those errors.

On December 31, 2009, the Pennsylvania Superior Court dismissed petitioner's appeal and affirmed the findings of the PCRA court. Commonwealth v. Bowers, No. 2703 EDA 2008 (unpublished memorandum) (Superior Court PCRA Appeal Opinion, attached hereto as Exhibit C). Petitioner again sought further review in the Pennsylvania Supreme Court, which was denied on September 12, 2013.  Commonwealth v. Bowers, 990 A.2d 37 (Pa. 2013) (No. 37 EAL 2010).

On September 23, 2013, petitioner filed his present pro se petition for writ of habeas corpus. On January 21, 2014, petitioner filed a counseled memorandum of law in support of the petition. In it, he raises nine claims claims: (1) that he was denied due process of law by the trial court's jury instructions on conspiratorial liability for first-degree murder; (2) that trial and direct appeal counsel were ineffective for the manner in which they argued that the jury charge on conspiratorial liability for first-degree murder was supposedly erroneous; (3) that trial counsel was ineffective for not pursuing additional avenues of impeachment in cross-examining the Commonwealth's witnesses; (4) that the evidence was insufficient to sustain his conviction for first-degree murder; (5) that direct appeal counsel was ineffective for the manner in which she contested the sufficiency of the evidence; (6) that trial and direct appeal counsel were ineffective for not litigating a Batson claim; (7) that he was denied due process when the trial court admitted evidence that he possessed a gun on two other occasions; (8) that trial and direct appeal counsel were ineffective for the manner in which they argued that evidence that petitioner possessed a gun on two other occasions was supposedly inadmissible; and (9) that petitioner is entitled to relief based upon the "cumulative prejudice" from these alleged errors. All of his claims are procedurally defaulted or were reasonably rejected by the state courts on grounds that are not incompatible with federal law. Accordingly, petitioner is not entitled to habeas relief on any of them.

IV.    **DISCUSSION**

Because Petitioner has failed to establish any entitlement to federal habeas relief, Respondents respectfully request that this Court dismiss the petition with prejudice, without a hearing, and without issuing a certificate of appealability.

A.    **Standards Governing Petitioner's Claims for Relief**

1.    Standards Governing Exhaustion and Default

A state prisoner may only obtain federal habeas review of a claim that his state confinement violates federal law after first exhausting all remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). To satisfy the exhaustion requirement, a petitioner must "fairly present" his claims to the state courts in the first instance, to give them a meaningful opportunity to correct alleged constitutional violations. Duncan v. Henry, 513 U.S. 364, 365 (1995). Fair presentation requires that the same claim — i.e., the same legal theory applied to the same facts — have been presented at all available levels of the state judicial system. Anderson v. Harless, 459 U.S. 4, 7 (1982); Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000). See also O'Sullivan, 526 U.S. at 846 ("fair presentation" requires that prisoner present claim through "one complete round of the State's established appellate review process"). If a state prisoner has a right under state law that he may still raise "by any available procedure," he shall not be deemed to have satisfied the exhaustion requirement and is thus not entitled to federal habeas review of that claim.   28 U.S.C. § 2254(c). The petitioner bears the burden of proving that he has exhausted available remedies as to each claim. O'Sullivan, at 842; Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993).

The Third Circuit has explained that "[e]xhaustion of state remedies is not a merely a formality" and instead serves important interests of comity and federalism. O'Halloran v. Ryan, 835 F.2d 506, 509 (3d Cir. 1987); O'Sullivan, 526 U.S. at 844-45. See also Landano v. Rafferty,

897 F.2d 661, 668 (3d Cir. 1990) (exhaustion "expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions" by recognizing that "state courts, no less than federal courts, are bound to safeguard the constitutional rights of state criminal defendants"); Rose v. Lundy, 455 U.S. 509, 518 (1982) (exhaustion protects state courts' role in enforcing federal law and prevents disruption of state proceedings).

A claim becomes procedurally defaulted where it has not been "fairly presented" to the state courts and state remedies are no longer available. In such instances, the prisoner has defaulted his federal claims in state court "pursuant to an independent and adequate state procedural rule." Gray v. Netherland, 518 U.S. 152, 161-62 (1996); Coleman v. Thompson, 501 U.S. 722, 749 (1991). See also Harris v. Reed, 489 U.S. 255, 261-62 (1989) (state court's rejection of federal claim is generally unreviewable if it rests on independent and adequate state law grounds such as failure to comply with state's rules for presentation of claims and arguments); O'Sullivan, 526 U.S. at 847-49 (deadline for filing petition is "independent and adequate state procedural rule"). Procedural default protects the integrity of the federal exhaustion rule because prisoners would otherwise have a strong incentive to ignore state procedural rules and thus circumvent the exhaustion requirement. O'Sullivan, 526 U.S. at 848.

Review of procedurally defaulted claims is permitted only in very limited circumstances, where the prisoner shows "cause for the default and actual prejudice" or that the federal court's failure to consider the claim will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 749. "Cause" for procedural default exists if the petitioner "can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner can only prove prejudice, in turn, by demonstrating that the errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id., 477 U.S. at 494 (internal

quotations and citations omitted; emphasis in original). To establish a "miscarriage of justice," a petitioner must present new evidence of his actual innocence. Schlup v. Delo, 513 U.S. 298, 321 (1995). See also Calderon v. Thompson, 523 U.S. 538, 559 (1998) (to prove "actual innocence" to excuse procedural default, petitioner must produce "reliable evidence" not presented at trial showing that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence"); Schlup, 513 U.S. at 324, 329 ("reliable evidence" is "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

2.    Requirements for Relief under Section 2254(d) and Strickland

Requirements for Relief under Section 2254(d)

The federal habeas statute limits a federal court's authority to grant habeas relief when a state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under Section 2254(d), a state court's resolution of a constitutional issue may not be disturbed unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2). A federal habeas court thus may not perform a "first-order," or de novo, review of the merits of claims and instead may only conduct a "second-order" evaluation of the underlying reasonableness of the state courts' treatment of such claims in light of Supreme Court precedent or the factual record.

Under Section 2254(d)(1), a writ for habeas corpus relief may issue only under the two narrow circumstances set forth in what have come to be known as the "contrary to" and "unreasonable application" clauses of Section 2254(d)(1), both of which require great deference to state court decisions. 28 U.S.C. § 2254(d)(1). See also Williams v. Taylor, 529 U.S. 362, 412

(2000) (both "contrary to" and "unreasonable application" clauses require more than mere finding that state court's decision was incorrect).

The "contrary to" clause entitles a petitioner to relief only if the state court decision "was contrary to, or involved an unreasonable application of" United States Supreme Court precedent. 28 U.S.C. § 2254(d)(1). See also Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (federal relief unavailable unless state court decision was "contrary to" clearly established Supreme Court holdings on federal law); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999) (en banc) (federal habeas courts may consider decisions of inferior federal courts but "may not grant habeas corpus relief based on the state court's failure to adhere to the precedent of a lower federal court on an issue that the Supreme Court has not addressed"); Williams, 529 U.S. at 412 (clearly established federal law is limited to *Supreme Court* case law). The Supreme Court has emphasized that the state court must have "arrived at a conclusion *opposite* to that reached by this Court on a question of law" or decided a case differently on a set of "materially indistinguishable" facts. Williams at 405 (emphasis added). The Court has noted that most cases will *not* fit into this narrow category, which is limited to the direct and unequivocal contravention of Supreme Court authority. Id. at 406. This is a "difficult to meet" and "highly deferential" standard for evaluating state-court rulings, "which demands that state court rulings be given the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (internal quotations omitted). See also Matteo, 171 F.3d 877 at 888 (under "contrary to" clause, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's," as he must instead establish "that Supreme Court precedent *requires* the contrary outcome") (emphasis in original).

Similarly, under the "unreasonable application" clause of Section 2254(d)(1), habeas relief is appropriate only if the state court application of United States Supreme Court precedent

is objectively "unreasonable." 28 U.S.C. § 2254(d)(1). A state court unreasonably applies clearly established federal law only if it: (1) "identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case"; or (2) "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407. Accordingly, a federal habeas court "may not issue a writ simply because that court concludes *in its judgment* that the relevant state court decision applied clearly established federal law erroneously or incorrectly." Williams, 529 U.S. at 411 (emphasis added).

Section 2254(d)(2), in turn, sharply restricts the circumstances in which a federal habeas court may grant relief based on a state court's factual determinations. The petitioner must show that the state court verdict rested on an unreasonable determination of the evidence and that a reasonable factfinder could not have reached a similar decision. Campbell v. Vaughn, 209 F.3d 280, 291 (3d Cir. 2000). A court must presume that the state court's factual findings are correct, and it is the petitioner's burden to overcome this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See also Marshall v. Lonberger, 459 U.S. 422, 435 (1983) (requiring respect for state court's factual findings and "inferences fairly deducible from those facts").

In this manner, Section 2254(d)(1) requires that a federal habeas court confine its review to the reasonableness of a state court decision in light of Supreme Court precedent, and Section 2254(d)(2) mandates that federal courts defer to state courts' factual determinations.

Finally, there is an additional, independent requirement on federal habeas review: for a petitioner to qualify for relief, the alleged constitutional violation must have had a "substantial and injurious effect" on the outcome of the trial or proceeding. Brecht v. Abramson, 507 U.S. 619, 637 (1993). Accord Fry v. Pliler, 551 U.S. 112, 121 (2007).

Strickland v. Washington

The "clearly established federal law" governing ineffectiveness claims is found in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). Bell v. Cone, 535 U.S. 685, 697-98 (2002). This same standard for ineffectiveness is used by the Pennsylvania courts in assessing ineffective assistance of counsel under the Pennsylvania constitution. Priester v. Vaughn, 382 F.3d 394, 397-98 (3d Cir. 2004).

The Strickland standard is by itself "highly deferential," because counsel is presumed effective. Strickland, 466 U.S. at 687, 689. Where the state court has already evaluated a claim under Strickland, judicial review is not only "highly deferential, but "doubly deferential" because of the respect for state court decisions mandated by the habeas statute. 28 U.S.C. § 2254(d), (e)(1); Williams, 529 U.S. at 411-12; Yarborough v. Gentry, 540 U.S. 1, 7 (2003) (per curiam). See also Bell, 535 U.S. at 698-99 (petitioner alleging ineffectiveness "must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance" and instead "must show that the [state] [c]ourt . . . applied Strickland to the facts of his case in an objectively unreasonable manner."); Werts, 228 F.3d at 204 (same).

Strickland requires that a petitioner asserting ineffectiveness establish both that counsel's performance was deficient and that the deficiency resulted in prejudice, i.e., that the errors made were "so serious" that counsel was "not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. First, the petitioner first "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotations and citation omitted). Moreover, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct from counsel's perspective at the time." Id. Second, the petitioner must establish that counsel's

deficient performance resulted in extreme prejudice that deprived the petitioner "of a fair trial, a trial whose result is reliable." Id. at 687.  This requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" in light of "the totality of the evidence before the judge or jury." Id. at 694-95.  Absent a showing of both deficiency and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.

Strickland thus imposes the "highly demanding" requirement of proof of the "gross incompetence" of counsel, Kimmelman v. Morrison, 477 U.S. 365, 382 (1986), such that only the "rare claim" of ineffectiveness should succeed. Buehl, 166 F.3d at 169.

**B.    Petitioner's Claims Do Not Entitle Him to Relief.**

Now matter how liberally construed, Petitioner's application for federal habeas relief fails to advance any legitimate basis for the issuance of the writ. His claims were reasonably rejected by the state courts for lack of merit, as is outlined in greater detail below.

1.    Petitioner's due process challenge to the trial court's instructions on accomplice and conspiratorial liability for first-degree murder is procedurally defaulted and, in any event, meritless.

In his first claim, petitioner alleges that the trial court erred instructing the jury on accomplice and conspiratorial liability for first-degree murder. Petitioner raised this claim on direct appeal, and the Pennsylvania Superior Court rejected it as meritless. However, the due process claim presented to this Court is not the same claim that was presented to the Superior Court. Since petitioner failed to fairly present the instant claim to the state court, the claim is procedurally defaulted and must be dismissed. In any event, it is also meritless.

Petitioner never presented a due process issue to the state courts. Rather, he merely argued that the trial court erred as a matter of state law in instructing the jury on accomplice and conspiratorial liability. Indeed, in his brief on direct appeal, petitioner cited nothing but state case

law to support his underlying claim that the trial court erred in its jury charge (Exhibit A, 15-19).

He mentioned neither the United States Constitution nor the right to due process. Thus, petitioner

failed to satisfy the exhaustion requirement. See Duncan v. Henry, 513 U.S. 364, 366 (1995)

(holding that petitioner did not fairly present due process claim where claim advanced in state

court relied only on state law); see also Baldwin v. Reese, 541 U.S. 27 (2004); Keller v. Larkins,

251 F.3d 408 (3d Cir. 2001).

Because petitioner has no remaining state forum in which to present this federal claim, it

is now procedurally defaulted and not entitled to federal review unless petitioner can show that

the default should be excused.  Petitioner does not even allege cause and prejudice, a miscarriage

of justice, or otherwise explain why this defaulted claim should be reviewed.  Accordingly, the

procedural default cannot be excused, and review of this claim is unavailable.  See Teague v.

Lane, 489 U.S. 288, 298 (1989) (holding that petitioner's failure to allege cause for his default

precluded federal habeas review of defaulted claim).

Even if this Court chooses to review petitioner's claim of instructional error, it is clearly

meritless. Petitioner claims that the jury was led to believe that it could find him guilty of first-

degree murder as an accomplice or co-conspirator even if he lacked the specific intent to kill.

The Superior Court examined the instruction and concluded that it was proper under state law.

The Superior Court referred to the Pennsylvania Supreme Court's opinion in co-defendant

Rasheed Simpson's case:

> [A]s the *Simpson* Court points out, the jury's instructions included
> the following directive: 'in order to find the defendants guilty of
> murder in the first degree, you must find that *the particular
> defendant had the specific intent to kill*.' The Court found,
> viewing the charge in its entirety, that the jury was adequately apprised that
> 'Appellant could only be convicted of first degree murder if he
> harbored the specific intent to take the victim's life.'

Commonwealth v. Bowers, No. 2465 EDA 2003 (Exhibit B, 5-6) (emphasis in original).

16

This conclusion as to a matter of state law is unassailable on habeas review. State courts are the exclusive arbiters of state rules. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief"). This Court is therefore bound by the state court's holding that the accomplice and conspiratorial liability instructions were a correct statement of Pennsylvania law.

In any event, petitioner suffered no due process violation.[2] "[A] habeas corpus petitioner faces a heavy burden in challenging allegedly defective jury instructions. The petitioner must show that the offending instruction is so oppressive as to render a trial fundamentally unfair." Government of Virgin Islands v. Smith, 949 F.2d 677, 684 n.7 (3d Cir. 1991) (quotation marks and citations omitted). It is not enough that the instruction was merely "undesirable, erroneous, or even universally condemned." Cupp v. Naughton, 414 U.S. 141, 146 (1973) (quotation marks omitted). Moreover, "[i]t is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147). The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." Estelle, 502 U.S. at 73 (quoting Dowling v. United States, 493 U.S. 342, 352 (1989)).

Viewing the instructions in their entirety, as they must be, the trial court coherently and unambiguously reiterated that the evidence against petitioner must be considered separately from that of his co-defendant, and that the Commonwealth had to prove beyond a reasonable doubt that petitioner had specific intent to kill in order to sustain a verdict of first degree murder. As

---

[2]  If petitioner's state court pleadings are to be read so liberally as to have presented a federal claim, fairness requires that the state courts' decisions be interpreted broadly, to have rejected the federal claim that petitioner supposedly presented. That would trigger the deferential habeas standard; petitioner cannot meet that standard, because there is no "clearly established law" from the United States Supreme Court which dictates a different result. See Waddington v. Sarausad, 555 U.S. 179 (2009) (rejecting challenge to accomplice liability instructions under deferential habeas standard).

the Pennsylvania Supreme Court noted when rejecting this very claim on co-defendant

Simpson's appeal:

> It was against the backdrop of this clear charge to the jury
> regarding the requisite mental state for first-degree murder that the
> court further instructed the jury regarding the principles of
> accomplice and conspiratorial liability. In reviewing the
> instructions of the trial court as to accomplice and conspiratorial
> liability, nothing in the language of those instructions undermined
> the clear charge regarding the specific intent element of first-
> degree murder.

Commonwealth v. Simpson, 754 A.2d 1265, 1275 (Pa. 2000).[3] It is inconceivable that the trial

court's "clear charge" to the jury infected the trial as to violate due process.

Petitioner also argues that, despite the absence of any error in the trial court's

instructions, their "prejudicial effect" was "augmented" by the Commonwealth's closing

argument because the prosecutor referred to the conspirators without distinguishing their roles

(Memorandum of Law, 29-30). However, petitioner fails to note any United States Supreme

Court case that suggests, much less holds, that a prosecutor's closing argument can cause a

proper instruction to become improperly ambiguous. Rather, juries are presumed to follow their

instructions. See Richardson v. Marsh, 481 U.S. 200, 206 (1987); Government of Virgin Islands

v. Rosa, 399 F.3d 283, 297 (3d Cir. 2005) ("[w]e must assume that juries for the most part

understand and faithfully follow instructions."). In any event, the evidence against petitioner and

Simpson was virtually identical and did not establish which of the co-conspirators fired the fatal

gunshots. The prosecutor did not argue that a defendant could be convicted of first-degree

murder without a specific intent to kill, and his argument was based upon the evidence.

---

[3] Petitioner claims that the Superior Court improperly adopted the reasoning of the Pennsylvania
Supreme Court because "the case against Mr. Simpson was far different from the prosecution's
case against Petitioner" (Memorandum of Law, 32). However, the Pennsylvania Supreme Court
based its holding on the words of the instruction and not the facts of the case. Simpson, 754
A.2d at 1273-77. Accordingly, the Superior Court properly rejected petitioner's identical claim.

Thus, petitioner's procedurally defaulted due process claim, which is unreviewable in the first place, would provide no ground for habeas relief.

 2. The state courts reasonably rejected petitioner's meritless claim that trial and direct appeal counsel were ineffective for failing to properly litigate an objection to the trial court's jury instructions.

Petitioner next claims that his trial and appellate counsel were ineffective for the manner in which they presented their challenges to the jury instructions on conspiratorial liability for first-degree murder. Because this claim was reasonably and correctly denied by the state courts, there is no basis for habeas relief.

The Superior Court rejected this ineffective-assistance-of-counsel claim as previously litigated in that its ruling on direct appeal that the trial court's instructions were accurate foreclosed relief on this claim. Commonwealth v. Bowers, No. 2703 EDA 2008 (Exhibit C, 13-16). The Third Circuit has ruled that such claims are to be considered as having been rejected on the merits by the state courts, and therefore subject to the AEDPA standard of review. See Boyd v. Waymart, 579 F.3d 330, 368-74 (3d Cir. 2009). The Superior Court also observed that even if the issue had not been previously litigated, it lacked merit because petitioner failed to establish that he was prejudiced by the jury instructions (Exhibit C, 14-16). Because petitioner cannot show that the state courts' rejection of this claim was unreasonable in light of the ineffectiveness standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), his claim must fail. See Williams, 529 U.S. at 379-390 (describing the AEDPA standard).

The Superior Court clearly held that the instruction given in this case was correct under state law. That conclusion is binding on this Court. In addressing a claim of ineffective assistance of counsel also relating to an accomplice liability jury instruction, the Third Circuit explained that federal habeas courts are "[b]ound by the state court's determination that the instruction at issue comported with state law." Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir.

2004). Where, as here, the state court has concluded that the instruction complied with state law, "it is evident that [the petitioner] cannot satisfy the first component of a viable ineffective assistance of counsel claim – that counsel's performance was deficient. Thus, [the petitioner] cannot overcome the 'strong presumption' that his counsel's conduct fell outside the 'wide range of reasonable professional assistance.'" Id.

Finally, trial counsel did in fact object to the trial court's accomplice liability instructions, and appellate counsel litigated the claim on direct appeal. Because the jury instructions were clear and accurate, there is no merit to petitioner's allegation that his previous counsel were ineffective for the manner in which they presented the claim. See also United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument"); United States v. Fulford, 825 F.2d 3, 9 (3d Cir. 1987) (rejecting claim that defense counsel was ineffective for failing to pursue a meritless issue). The Superior Court reasonably rejected petitioner's meritless claim, and it entitles him to no relief here. 28 U.S.C. § 2254(d)(1).

> 3. The state courts reasonably rejected petitioner's meritless claim that trial counsel was ineffective for not pursuing additional avenues of impeachment in cross-examining the Commonwealth's witnesses.

Petitioner asserts that trial counsel was ineffective for failing to have the former testimony of Felicia Brokenbrough read to the jury and for failing to impeach other Commonwealth witnesses with alleged former testimony and statements. These claims were reasonably rejected by the state courts on collateral review and therefore cannot entitle petitioner to relief.

a.  Testimony of Felicia Brokenbrough

Felicia Brokenbrough testified for the Commonwealth at Allister Durrante's trial. She could not be located to testify at petitioner's trial, and petitioner claims that trial counsel should have attempted to have her prior testimony read to the jury. At Durrante's 1995 trial, Ms. Brokenbrough testified that she saw the victim "*somewhere around*" 10:00 or 10:30 p.m., when she walked with him to buy cooking oil. The victim was abducted as they were returning to his apartment. At petitioner's trial, Rasheema Washington testified that on the night of the murder she left work at 7 or 8 p.m. and that petitioner called her at some point after that and announced he was coming over. She was uncertain of the time of the call and uncertain of the amount of time that elapsed between the call and petitioner's arrival with his cohorts and the victim. Petitioner argues that, if the jury had heard Brokenbrough's testimony that she saw the victim somewhat later than the time Rasheema Washington said petitioner and his cohorts arrived at her apartment with the victim, it would have rejected Rasheema Washington's testimony in its entirety as a fabrication.

On appeal from the denial of PCRA relief, the Superior Court rejected Petitioner's claim of trial counsel's ineffectiveness on the merits, explaining as follows:

> Our review of the record further reflects that Ms. Washington was unsure of the exact time of the crimes she witnessed in her apartment, except to say that they were in the evening after she had returned home from work. N.T. 12/12/97, at 10-11, 42. Given that [Brokenbrough] was also vague about the exact time she saw the victim, we cannot agree with Appellant that this testimony would have impeached the eyewitness testimony offered by Ms. Washington at Appellant's trial. Therefore, Appellant has failed to establish that the absence of this evidence prejudiced Appellant. Consequently, Appellant has failed to establish trial counsel was ineffective in this regard.

Commonwealth v. Bowers, No. 2703 EDA 2008 (Exhibit C, 8-9 (footnote omitted)).

Petitioner cannot establish that the Superior Court's rejection of his claim of trial counsel's ineffectiveness was unreasonable. He claims that other prosecution witnesses at Durrante's trial corroborated Brokenbrough's timeline of events, placing the time of the abduction later than that testified to at petitioner's trial (Memorandum of Law, 50-51). That the Commonwealth's witnesses may not have had identical recollections as to the time when the doorbell rang, the ransom calls occurred, etc., does not mean that they fabricated the events. Moreover, Ms. Brokenbough's testimony as to the series of events leading up to the victim's abduction was consistent with the testimony of Clayton Duncan, who was permitted to testify to Brokenbrough's excited utterance to him.[4] Finally, Ms. Brokenbrough's testimony would have done nothing to undermine Ms. Washington's account of the events that occurred in her apartment when petitioner arrived with the bound victim and he and his cohorts beat the victim as he lay on the floor.

On this record, petitioner simply cannot demonstrate that the jury would have acquitted him if the former testimony of another witness as to the time she was with the victim on the night of the murder had been admitted. Because this claim was reasonably rejected by the state courts on grounds entirely compatible with relevant federal law, it can afford him no relief.

---

[4] At Durrante's trial, Ms. Brokenbrough testified that one assailant fired a shot, chased the victim down an alley, and thren dragged him back to a car, where at least one other assailant pulled the victim inside the car. When the car drove off, she rang the doorbell of the victim's apartment building to inform his neighbors of the kidnapping. When Duncan responded, she told him that "somebody had just snatched [the victim] in the car" (N.T. 10/4/95, 16-26). At petitioner's trial, Duncan testified that, from upstairs, he heard a shot a few minutes before Ms. Brokenbrough rang the doorbell. When he answered the door, he found Brokenbrough visibly shaken on the doorstep. She told him that "some dudes " fired a shot and then forced the victim into their car (N.T. 12/10/97, 52-53, 58-60).

22

b. Testimony of other Commonwealth witnesses.

Petitioner also contends that trial counsel was ineffective in his cross-examination of prosecution witnesses Clayton Duncan, Stanley Hall, and Selvan Haynes, because he purportedly did not capitalize upon alleged inconsistencies between their trial testimony and their prior accounts of the events on the night of the murder. This claim, too, was reasonably rejected as meritless by the state courts.

Trial counsel zealously and ably attacked Duncan, Hall, and Haynes on cross-examination. Petitioner argues here, as he did in state court, that the outcome of his trial would have been different if trial counsel had cross-examined these witnesses with the *additional* material to which he now refers. In rejecting this claim, the Superior Court noted that trial counsel "attempted to uncover alleged inconsistencies in their versions of events. The extent to which defense counsel persisted with cross-examination was a matter left to trial counsel's strategy." Commonwealth v. Bowers, 2703 EDA 2008 (Exhibit C, 10). The court concluded that petitioner failed to prove prejudice based upon counsel's tactics on cross-examination. Id. The Superior Court's opinion is supported by both the factual record and the law. See, e.g., U.S. v. Travillion, 2014 WL 3029837 (3d Cir. 2014) (attorney's failure to cross-examine drug supplier with his testimony from another drug prosecution did not prejudice defendant and thus could not amount to ineffective assistance; defense counsel extensively cross-examined the witness, and evidence of defendant's guilt was overwhelming); Alexander v. Shannon, 163 Fed.Appx. 167 (3d Cir. 2006) (nonprecedential) (attorney's failure to impeach victim's father with police report that contradicted his testimony about whether defendant used false area code on hotel registration card was not ineffective; although police report could have been used to impeach father, his recollection of the area code on the hotel registration card had little direct bearing on whether defendant was guilty); U.S. v. Ciancaglini, 945 F.Supp. 813 (E.D. Pa., 1996) (trial

23

counsel's failure to cross-examine government witness regarding slight inconsistencies between his trial testimony and his prior grand jury testimony fell within realm within sound trial strategy and did not amount to ineffective assistance of counsel).

Again, because petitioner cannot show that the state courts' rejections of petitioner's ineffectiveness claim was objectively unreasonable in light of Strickland, his claim must fail. Woodford, 537 U.S. at 25.

> 4. The state courts reasonably rejected petitioner's challenge to the sufficiency of the evidence.

Petitioner alleges that the evidence was insufficient to sustain his conviction for first-degree murder. The Superior Court rejected this claim as meritless on direct appeal. Commonwealth v. Bowers, No. 2468 EDA 2003 (Exhibit B, 6). Because petitioner cannot show that the state court's rejection of this claim was unreasonable in light of clearly established Supreme Court precedent, his claim must fail. See Williams, 529 U.S. at 379-390.

The federal constitutional standard for evaluating a due process claim based upon the sufficiency of the evidence is found in Jackson v. Virginia, 443 U.S. 307 (1979). Under Jackson, the court must determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof of guilt beyond a reasonable doubt. Id. at 319, 324; see also Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997) (applying Jackson standard to sufficiency of the evidence claim). In addition, federal review of a sufficiency claim under Jackson must be based upon state law; i.e., the ultimate question is whether the prosecution provided evidence to support the substantive elements of the offense as defined by state law. Jackson, 443 U.S. at 324 n. 16. Moreover, the determination of witness credibility, the resolution of evidence conflicts, and the drawing of reasonable inferences from proven facts all fall within the exclusive province of the fact-finder, and are therefore beyond the scope of federal habeas sufficiency review. Herrera v. Collins, 506 U.S. 390, 401-402 (1993) (citing

24

Jackson, supra). Finally, under AEDPA, review for sufficiency of the evidence does not entail a de novo analysis, but rather means that a determination must be made as to whether the state court disposition was an objectively unreasonable application of the Jackson standard. See Williams, 529 U.S. at 379-390.

The Pennsylvania Crimes Code defines first-degree murder as a criminal homicide "committed by an intentional killing." 18 Pa.C.S. § 2502(a). To obtain a first-degree murder conviction, the Commonwealth must demonstrate that a human being was unlawfully killed, the defendant perpetrated the killing, and he acted with malice and a specific intent to kill. Commonwealth v. Kennedy, 959 A.2d 916, 921 (Pa. 2008); Commonwealth v. Roney, 866 A.2d 351, 356 (Pa. 2005).

Here, the state court's rejection of petitioner's sufficiency claim was in no way unreasonable under Jackson. The Superior Court recognized that the Pennsylvania Supreme Court had already considered the sufficiency of the evidence supporting co-defendant Rasheed Simpson's conviction. It noted that

> The [Supreme] Court determined that the evidence was sufficient to support the verdict in that 'Appellant willingly and consciously participated in the killing of the victim,' that he conspired with others in perpetrating an abduction for ransom, and that the victim was murdered when the amount of money demanded by the conspirators was not forthcoming.

Commonwealth v. Bowers, 2468 EDA 2003 (Exhibit B, 6), citing Commonwealth v. Simpson, 754 A.2d at 1269. Because of the Superior Court's reference to "Appellant"—meaning co-defendant Rasheed Simpson—petitioner contends that the Superior Court did not actually address the sufficiency of the evidence claim as it pertained to him. He is wrong. The evidence did not establish which of the co-conspirators fired the killing shots. But it was petitioner who decided to use Rasheema Washington's apartment to make the demand for money. Otherwise, the evidence

against the four co-conspirators was identical, except that a ransom call was placed from Washington's bedroom by Simpson and Durrante, and petitioner was found in possession of a gun after the murder. The conspirators acted together in kidnapping and binding the victim, taking him to Washington's apartment, and then in beating him as they demanded money. In rejecting co-defendant Simpson's sufficiency claim on appeal, the Supreme Court concluded that "without hesitation" there was sufficient evidence to sustain his conviction for first-degree murder. Commonwealth v. Simpson, 754 A.2d 1269.[5] That reasoning applies equally to petitioner, who was an active participant in the same kidnap-for-ransom plot, which ended in the victim being shot to death. See Commonwealth v. Wayne, 720 A.2d 456 (Pa. 1998) (evidence sufficient to prove appellant's guilt of murder of the first degree where he and two co-conspirators approached a man simultaneously from opposite directions and he engaged the victim's friend in conversation while the co-conspirators shot and killed the victim); Commonwealth v. Daniels, 644 A.2d 1175 (Pa. 1994) (evidence sufficient to prove appellant's guilt of murder of the first degree where he participated in a kidnapping-for-ransom plot and his co-conspirator shot and killed the victim).

The evidence presented at trial was sufficient to establish petitioner's guilt of first-degree murder, and it was not unreasonable for the state courts to resolve his claim on appeal as they did. Because petitioner cannot demonstrate that the Superior Court's rejection of his meritless sufficiency claim was an unreasonable application of Jackson, habeas relief must be denied. See Williams, 529 U.S. at 379-390.

---

[5]   In rejecting Rasheed Simpson's sufficiency claim, the Pennsylvania Supreme Court also noted that "[t]he record establishes that [Simpson] and the three other men abducted the victim and brought him to Washington's apartment. While there, Washington observed the group beat the victim and demand money.... The evidence further confirmed the Commonwealth's theory that the group followed through on their threat to kill the victim when the victim's brother failed to surrender the requested amount of money." Commonwealth v. Simpson, 754 A.2d 1269.

5. The state courts reasonably rejected petitioner's meritless claim that direct appeal counsel was ineffective in developing his challenge to the sufficiency of the evidence.

Petitioner next claims that direct appeal counsel was ineffective for failing to properly develop the claim challenging the sufficiency of the evidence for his first-degree murder conviction. Because this claim was reasonably and correctly denied by the state courts, there is no basis for habeas relief.

The Superior Court rejected this ineffective-assistance-of-counsel claim as previously litigated in that its ruling on direct appeal that the evidence was sufficient foreclosed relief on this claim. Commonwealth v. Bowers, No. 2703 EDA 2008 (Exhibit C, 16-17). The Third Circuit has ruled that such claims are to be considered as having been rejected on the merits by the state courts, and therefore subject to the AEDPA standard of review. See Boyd v. Waymart, 579 F.3d 330, 368-74 (3d Cir. 2009). Moreover, the Superior Court observed that petitioner "failed to establish that he suffered the requisite prejudice necessary to prove his claim of ineffective assistance because he has failed to prove that the outcome of the proceedings would have been different." Commonwealth v. Bowers, No. 2703 EDA 2008 (Exhibit C, 17 n.3). Because petitioner cannot show that the state courts' rejection of this claim was unreasonable in light of the ineffectiveness standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), his claim must fail. See Williams, 529 U.S. at 379-390 (describing the AEDPA standard).

6. <u>The state courts reasonably rejected petitioner's claim that trial counsel was ineffective for failing to raise a Batson objection.</u>

Petitioner claims that his trial counsel was ineffective for failing to object to the prosecution's use of peremptory challenges in violation of <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). The state courts rejected this claim as meritless. That was a reasonable determination, and habeas relief must be denied.[6]

On PCRA appeal, the Superior Court held that petitioner failed to prove "purposeful discrimination by a preponderance of the evidence" and therefore "failed to establish that trial counsel was ineffective for failing to object to the jury selection process." <u>Commonwealth v. Bowers</u>, No. 2703 EDA 2008 (Exhibit C, 13). The court explained that where, as here, there is an allegation that trial counsel failed to make a <u>Batson</u> challenge during voir dire, "a post-conviction petitioner may not rely on a prima facie case under <u>Batson</u>, but must prove actual, purposeful discrimination by a preponderance of the evidence. . ." Exhibit C, 11, <u>citing</u> <u>Commonwealth v. Uderra</u>, 862 A.2d 74, 87 (Pa. 2004).

Petitioner now argues that the Pennsylvania standard for PCRA petitioners asserting unpreserved jury discrimination claims is contrary to <u>Batson</u> (Memorandum of Law, 58). He is wrong. Petitioner relies on <u>Holloway v. Horn</u>, 355 F.3d 707 (3d Cir. 2004), in which the Third Circuit was critical of the Pennsylvania Supreme Court's requirement that, to establish a prima facie case of discrimination, a defendant must make an adequate record on which the claim may be assessed. But <u>Holloway</u>'s dicta disapproving the record-making requirement has since been

---

[6] Petitioner also tacks on a claim that his appellate counsel was ineffective for failing to pursue a <u>Batson</u> claim on direct appeal (Memorandum of Law, 56). Because Petitioner did not argue to the Superior Court that direct appeal counsel was ineffective, that court necessarily did not address this claim (Exhibit C, 1-5.) Therefore, his allegation of direct appeal counsel's ineffectiveness is procedurally defaulted <u>See</u> <u>O'Sullivan</u>, 526 U.S. at 846 ("fair presentation" requires that prisoner present claim through "one complete round of the State's established appellate review process").

implicitly rejected. The Third Circuit has recognized that it is exceptionally difficult for a reviewing court to develop the record necessary to assess whether an attorney used a peremptory challenge on the basis of race. Thus, failure to raise a timely Batson objection at trial results in forfeiture of the claim. Lewis v. Horn, 581 F.3d 92, 102 (3d Cir. 2009) ("[b]ecause Batson relies on trial judges 'to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination,' . . . a timely objection is a prerequisite to raising a Batson claim") (quoting Batson, 476 U.S. at 97)); Abu-Jamal v. Horn, 520 F.3d 272, 281-84 (3d Cir. 2008) (failure to timely object deprives the trial court of the "opportunity to promptly consider alleged misconduct during jury selection and develop a complete record"). In addition, the failure of a habeas petitioner to make a full record upon which to assess a Batson claim, results in forfeiture of that claim. Lewis, 581 F.3d at 104; Abu-Jamal, 520 F.3d at 290-92. Petitioner's claim that the state court decision was contrary to Supreme Court precedent is, therefore, baseless, as this Court has used a similar analysis.[7] See also McCrory v. Henderson, 82 F.3d 1243, 1251 (2d Cir. 1996) (holding that Batson claims that are not brought during jury selection are untimely; and that, even if these claims are reviewed, the three-step process does not apply) (cited with approval in Uderra, 862 A.2d at 86).

The relevant question before this Court is whether the state courts unreasonably applied Strickland when it rejected petitioner's claim of trial counsel's ineffectiveness. Because the Superior Court considered and rejected his claim on the merits, the federal habeas statute's

---

[7] Petitioner also claims that the standard set forth in Commonwealth v. Uderra conflicts with Johnson v. California, 545 U.S. 162 (2005). Johnson is inapposite. There, despite the facts that the black defendant was on trial for killing a white child and that the prosecutor struck the only black members of the venire, the trial court did not require him to state the reasons for the strikes. The Supreme Court overruled the state court's ruling that to establish a prima facie case, Batson required Johnson to present not merely "some evidence" permitting an inference of discrimination, but "strong evidence" making discriminatory intent more likely than not if the challenges are unexplained. Id., 167. In Johnson, unlike this case, a Batson objection had been made at trial. Thus, it is readily distinguishable and does not invalidate the Uderra standard.

deferential standard of review plainly applies. 28 U.S.C. § 2254(d); Harrington v. Richter, 131 S.Ct. 770, 784 (Section 2254(d) applies whenever a state court adjudicates a claim on the merits). Rather than engaging in the requisite analysis under Strickland and section 2254(d), petitioner argues that he is entitled to relief because he can make a prima facie Batson claim. Even assuming that a Batson-ineffectiveness claim is cognizable, petitioner faces a substantially heavier burden.[8] He must establish that the prosecutor's actions were so obviously in violation of Batson that no competent attorney in his trial counsel's position would have declined to raise an objection and that, had he raised one, there is a reasonable probability he would have prevailed. See Harrington, 131 .Ct. at 784; Strickland, 466 U.S. at 687.

Petitioner clearly has not demonstrated that his trial counsel was ineffective for declining to object to the prosecutor's use of peremptory challenges. His statistical analysis of jury selection does not give rise to even an inference of racial discrimination. The prosecutor used seventeen of his twenty peremptory strikes during the empanelling of the twelve jurors. Twelve of those strikes were used against black jurors and five against white jurors. The prosecutor was then given two additional peremptory strikes in choosing the two alternate jurors (each defendant was given one). The prosecutor used one of those strikes against an African American. The defense used 50% of their strikes against African Americans.[9] Moreover, the jury of twelve ultimately consisted of six black jurors and six white jurors. This is not strong evidence of

---

[8] The Supreme Court of the United States has never recognized a Batson-ineffectiveness claim. Indeed, it seems unlikely that the Supreme Court would endorse such a claim, since it would effectively allow an end-run around Batson's contemporaneous objection requirement. A Batson issue that was never raised at trial presents unique evidentiary and prudential problems, and it was these special difficulties that led the Third Circuit to adopt the timely objection requirement for Batson claims. See Abu-Jamal, 520 F.3d at 279-284. These problems are not alleviated by simply tacking an ineffectiveness allegation on to a forfeited Batson claim that was never considered by the trial court in the first instance.

[9] It is significant to note that at least five black jurors struck by the defense were *acceptable* to the Commonwealth (N.T. 12/3/97, 24; N.T. 12/4/97, 48, 132, 160; N.T. 12/5/97, 62).

anything, and it certainly does not show that the discrimination was so obvious that counsel was ineffective for failing to object. Indeed, the Third Circuit has rejected similar patterns as weak and inconclusive evidence of discrimination. See Williams v. Beard, 637 F.3d 195, 219 (3d Cir. 2011) (where prosecutor had strike rate of 87.5% and five African Americans sat on jury, statistics were "inconclusive at best"); Lewis v. Horn, 581 F.3d 92, 104 (3d Cir. 2009) (allegation that prosecutor used 67% of his strikes against blacks, accepted none, and empanelled an all-white jury, was not enough to establish prima facie case of discrimination without full context); Abu-Jamal v. Horn, 520 F.3d at 293 (prosecutor had strike rate of 67% and accepted three African-American jurors; "we have never found a prima facie case based on similar facts); Bond v. Beard, 539 F.3d 256 (3d Cir. 2008) (prosecutor had strike rate of 78.5%, final jury included 4 black jurors with two African-American alternates; "these raw statistics do not provide a clear picture of intentional racial discrimination").[10]

Additionally, the facts that the case was not race-sensitive, that the prosecutor himself was African American, and that the prosecutor did not exhaust his peremptory challenges, further undermine petitioner's statistical argument. Indeed, a reasonable person in trial counsel's position likely would have concluded that the prosecutor was exercising his peremptory challenges for tactical reasons wholly unrelated to the race of the prospective jurors.

Petitioner also claims that the Commonwealth struck several African-American jurors while retaining "similarly situated" white jurors (Memorandum of Law, 63). This argument falsely presupposes that the black and white jurors were materially similar in their appeal to the prosecution as jurors. But differences between the stricken and accepted jurors petitioner mentions are apparent on the face of the record. For example, Mabel Harris had children,

---

[10] Williams, Lewis, Abu-Jamal, and Bond all addressed Batson claims rather than ineffectiveness allegations. If these statistics are insufficient to carry the petitioner's burden of proof on the merits, then they clearly cannot show that the discrimination was so obvious that counsel was ineffective in declining to object.

including a son, around the same age as petitioner. She was unable to tell the prosecutor, without some prodding, the location of the nearest intersection to her current and former homes. When asked whether she could impose the death penalty, the most she could say was, "I think so" (N.T. 12/4/97, 164-72). See United States v. Hunter, 86 F.3d 679, 683 (7th Cir. 1996) (prosecutor properly struck juror who, *inter alia*, gave confused answers). Bruce Jamanow, Danny Ferrell, and Trina Mayson, with whom petitioner compares Ms. Harris, had no such infirmities (N.T. 12/3/97, 165-71; 12/4/97, 52-60; 12/5/97, 84-93). Janice Jones, a nurse, lived with her parents and repeatedly became irritated during the prosecutor's voir dire, beginning her answers with, "Like I said," and "As I understood it the first time" (N.T. 12/3/97, 66-73). Michelle Papa, with whom petitioner compares Ms. Jones, lived with her husband and two children (N.T. 12/3/97, 136), and did not demonstrate any similar impatience with questions from the lawyers. Petitioner's partial and selective comparative analysis ignores the prosecutor's reasonable, race-neutral reasons for striking the jurors.[11]

Petitioner also fallaciously attempts to bolster his claim by discussing the 1987 so-called McMahon tape and a law review article by Professor David Baldus. Courts consistently have declined to infer discriminatory intent from the mere existence of the McMahon video except where the petitioner was prosecuted by McMahon himself, or where there is some link between the prosecutor and the tape. See Lewis v. Horn, 581 F.3d at 104 (failure to present any evidence of Batson violation precluded relief on that basis or related claim of ineffectiveness; existence of McMahon tape did not show "culture of discrimination" at trial prosecutor's office, nor that prosecutor conducted process of jury selection improperly in specific case); Bond v. Beard, 539

---

[11] As the Supreme Court has observed, jury comparisons "may be misleading when alleged similarities were not raised at trial." Snyder v. Louisiana, 128 S.Ct. 1203, 1211 & n.2 (2008). For that reason, several circuits have held that such comparisons cannot be considered on federal habeas review unless the state courts were presented with the same arguments. See, e.g., Atwater v. Crosby, 451 F.3d 799, 807 (11th Cir. 2006), cert denied, 127 S.Ct. 951 (2007); Johnson v. Gibson, 169 F.3d 1239, 1248 (10th Cir. 1999), cert denied, 528 U.S. 972 (1999).

F.3d 256, 273-74 (3d Cir. 2008) (general allegations about improper jury selection practices at prosecutor's office, without particular facts in support and based primarily upon existence of McMahon tape, are insufficient to show constitutional violation). Petitioner was not prosecuted by former Assistant District Attorney Jack McMahon, and he has failed to proffer any evidence of a link between the prosecutor in his case and the McMahon tape. Additionally, petitioner's reliance on a study by Professor David Baldus is misplaced. He entirely omits any mention of McCleskey v. Kemp, 481 U.S. 279 (1987), in which the United States Supreme Court rejected the very same type of broad statistical information—as computed by the same Professor Baldus—as evidence of racial discrimination in criminal prosecutions. Even if such statistics were entirely accepted, the Court reasoned, the prisoner must still demonstrate that his particular case was infected by racism. Petitioner has entirely failed to make such a showing.

Counsel cannot be held ineffective for failing to raise or preserve a meritless claim. United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999). There is no evidence in this case that the prosecutor deliberately used peremptory challenges to strike jurors because of their race. The Superior Court's conclusion that counsel was not ineffective for failing to make a Batson objection was neither contrary to, nor an unreasonable application of, Strickland.

       7.   Petitioner's due process challenge to the admission of evidence that he possessed a gun is procedurally defaulted and unreviewable.

Petitioner claims that the trial court denied him due process when it permitted the Commonwealth to present evidence that he possessed a handgun on two other occasions. This claim is procedurally defaulted.

On direct appeal, petitioner claimed that the trial court "committed reversible error" by admitting evidence concerning his possession of the gun because its prejudicial effect outweighed its probative value (Exhibit A, 10-12). In support of his claim, petitioner cited

several state court decisions. However, he did not cite the federal Constitution nor any federal precedent. Accordingly, petitioner did not give the Superior Court a reasonable opportunity to address the constitutional claim he is asserting now. See Duncan v. Henry, 513 U.S. 364, 366 (1995) (holding that petitioner did not fairly present his due process claim where claim advanced in state court relied only on state law); see also Keller v. Larkins, 251 F.3d 408 (3d Cir. 2001); McCandless, 172 F.3d at 262. Since petitioner has not asserted either cause and prejudice or a miscarriage of justice sufficient to overcome this default, the claim is unreviewable. Keller, 251 F.3d at 415.

Furthermore, the admissibility of evidence is generally not a question of constitutional law, but a question of state law. See Crane v. Kentucky, 476 U.S. 683, 689-90 (1996) (state evidentiary error provides basis for habeas relief only where error is of such magnitude as to deny fundamental fairness). The Supreme Court has made it clear that "because states have considerable expertise in matters of criminal procedure and the criminal process is grounded in centuries of common-law tradition, it is appropriate to exercise substantial deference to the legislative judgments in this area." Medina v. California, 505 U.S. 437, 445-46 (1992). See also Marshall v. Lonberger, 459 U.S. 422, 438 n.6, (1983); Kontakis v. Beyer, 19 F.3d 110, 117 (3d Cir. 1994).

In state court, petitioner presented a clear allegation of error by the trial court under the state rules of evidence. The Superior Court found that the evidence was properly admitted under state law, as there were sufficient circumstances to justify an inference "that the particular weapon was likely to have been used in the commission of the crime charged." Commonwealth v. Bowers, No. 2468 EDA 2003 (Exhibit B, 2-4), quoting Commonwealth v. Spotz, 716 A.2d 580, 590 (Pa. 1998). Petitioner now wishes to present a new, constitutional, challenge to this

Court, which was never presented to any state court at any time. It is, thus, procedurally defaulted and must be dismissed.

> 8. The state courts reasonably rejected petitioner's meritless claim that trial and direct appeal counsel were ineffective for the manner in which they argued that evidence that petitioner possessed a gun was inadmissible.

Petitioner next alleges that trial and direct appeal counsel were ineffective for the manner in which they argued that evidence petitioner possessed a gun should not have been admitted. The Pennsylvania Superior Court reviewed this claim and found that the evidence was admissible, and thus counsel could not be ineffective. Because the state courts' rejection of this claim was not an unreasonable application of Strickland, it must fail. 28 U.S.C. § 2254(d).

On appeal from the denial of PCRA relief, the Superior Court rejected petitioner's ineffectiveness claim on the merits. The court noted that evidence that petitioner was in possession of a firearm was properly admitted to show that he had "the means to carry out the crime" and constituted "some evidence of the probability that he committed the crime." Commonwealth v. Bowers, No. 2703 EDA 2008 (Exhibit C, 18). The court explained:

> Furthermore, Appellant's allegation of remoteness of Appellant's possession of the gun does not affect its probative value. The record reflects that, at trial, Tracena Cooper testified that in September of 1993, five weeks prior to the murder, she purchased a 9 millimeter handgun for Appellant. N.T., 12/12/97, at 126-132. The same gun was confiscated from the vehicle Appellant was occupying eight days after the murder. Id., N.T. 12/11/97, at 106-108. Therefore, the evidence substantiated Appellant was in possession of the same gun both before and after the murder in question, and Appellant's argument lacks merit. Accordingly, Appellant's claim that trial and appellate counsel were ineffective for improperly arguing this issue fails.

Id. at 18-19.

Thus, the state courts held, as a matter of state law, that evidence of petitioner's possession of a gun was relevant and admissible. This conclusion as to a matter of state law is not subject to second-guessing on habeas review. Therefore, petitioner's ineffectiveness claim must fail, as trial and appellate counsel cannot be deemed ineffective for the manner in which they challenged fully admissible evidence. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (Federal courts reviewing habeas claims cannot "reexamine state court determinations on state-law questions."); Priester, 382 F.3d at 402 (rejecting ineffectiveness claim where underlying issue of state law was resolved against habeas petitioner by the state courts). Since previous counsel cannot be ineffective for failing to raise a meritless claim, the claim must be dismissed. Cf. United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument"). Accordingly, petitioner cannot meet his burden to demonstrate that the state court's determination was an objectively unreasonable application of Strickland.

9. The state courts reasonably rejected petitioner's claim of cumulative prejudice.

Finally, petitioner argues that the cumulative effect of counsel's supposed ineffectiveness was so great that it should entitle him to federal habeas relief. This claim was reasonably rejected by the state courts on collateral review and therefore cannot entitle petitioner to relief.

While cumulative errors can provide grounds for relief, it is well settled that "a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice." Collins v. Sec. of Pennsylvania Dept. of Corrections, 742 F.3d 528, 542 (3d Cir. 2014), quoting Fahy v. Horn, 516 F.3d 169, 205 (3d Cir. 2008). On appeal from the denial of PCRA relief, the Superior Court rejected petitioner's claim of cumulative error and found that because "there were no errors warranting relief, Appellant's allegation of cumulative error fails"

Commonwealth v. Bowers, No. 2703 EDA 2008 (Exhibit C, 19). Petitioner has not and cannot establish that he was actually prejudiced by any or all of the alleged errors in his petition. The Superior Court's conclusion that he did not suffer any cumulative prejudice was neither contrary to, nor an unreasonable application of, Strickland. Accordingly, this meritless complaint can entitle petitioner to no relief.

### C.    A Certificate of Appealability Should Not Issue.

Petitioner has made no showing that a certificate of appealability may properly issue in this case. Pursuant to Local Appellate Rule 22.2 of the Rules of the United States Court of Appeals for the Third Circuit, at the time a final order denying a habeas petition is issued, the district judge is required to make a determination as to whether a certificate of appealability should issue. Under Section 2253(c)(2) of the federal habeas statute, a habeas court may not issue a certificate of appealability unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal court rejects a petitioner's constitutional claims on the merits, "the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). In other words, the petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Id. (internal quotation and citations omitted). See also Barefoot v. Estelle, 463 U.S. 880, 892-93 (1983) ("It is generally agreed that "probable cause requires something more than the absence of frivolity, and that the standard is a higher one than the 'good faith' requirement of Sec. 1915."), reh'g denied, 464 U.S. 874 (1983). Here,

petitioner offers no reason to conclude that reasonable jurists would debate his supposed entitlement to the writ on the basis of any of the claims asserted in his federal habeas petition.

Moreover, when a federal court rejects a petitioner's constitutional claims as procedurally defective, a certificate of appealability is not warranted unless the petitioner demonstrates that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right; and (2) the district court was correct in its procedural ruling. 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack, 529 U.S. at 484. In this case, petitioner has failed entirely to establish that reasonable jurists could debate whether further review is warranted of the claims that are barred from federal habeas review on procedural grounds. Accordingly, a certificate of appealability should not issue.

## V.    CONCLUSION

For the foregoing reasons, Petitioner is not entitled to relief because his claims are procedurally defaulted and/or were reasonably rejected for lack of merit by the state courts. Respondents therefore respectfully request that this Court deny the petition with prejudice and without issuing a certificate of appealability.

Respectfully submitted,

/s/ Simran Dhillon

SIMRAN DHILLON
Assistant District Attorney

/s/ Thomas W. Dolgenos

THOMAS W. DOLGENOS
Chief, Federal Litigation

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MALIK BOWERS** | : | **CIVIL ACTION** |
| Petitioner, | | |
| | | |
| **V.** | : | |
| | | |
| **MICHAEL WENEROWICZ, et al.** | : | No. 13-5550 |
| Respondents. | | |

## <u>CERTIFICATE OF SERVICE</u>

I, SIMRAN DHILLON, counsel for appellants, hereby certify that on July 31, 2013, a copy of the foregoing motion was served by first-class U.S. Mail:

Carole L. McHugh, Esq.
410 Old York Road
Jenkintown, PA 19046


*/s/ Simran Dhillon*
_____
SIMRAN DHILLON
Assistant District Attorney